WESTFIELD INSURANCE COMPANY, Appellee,

v.

FACTFINDER MARKETING RESEARCH, INC., f.k.a. Message Factors/Cincinnati, Inc., et al., Appellants.

[Cite as *Westfield Ins. Co. v. Factfinder Marketing Research, Inc.,* 168 Ohio App.3d 391, 2006-Ohio-4380.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050580.

Decided Aug. 25, 2006.

392

Issac, Brant, Ledman & Teetor, L.L.P., James H. Ledman, and Scyld D. Anderson, for appellee.

Keating, Muething & Klekamp, P.P.L., Joseph M. Callow Jr., and Jason M. Cohen, for appellants.

SUNDERMANN, Judge.

{¶ 1} In this appeal, we must decide whether plaintiff-appellee, Westfield Insurance Company, must continue to provide a defense to defendants-appellants, Factfinder Marketing Research, Inc., and its proprietor, Ralph M. McGinnis, who were sued by a competitor, Message Factors, Inc. ("MFI"), in 2003. Factfinder and McGinnis claimed coverage under the "advertising injury" liability provision of Factfinder's insurance policy with Westfield.

{¶ 2} The trial court granted summary judgment for Westfield. In granting Westfield's motion, the court held that Westfield was not required to defend or indemnify Factfinder or McGinnis in the MFI lawsuit. Because we hold that MFI has pleaded a claim that is arguably within the policy coverage for an "advertising injury," we reverse the trial court's judgment.

## Background Facts

{¶ 3} In February 1989, McGinnis entered into a license agreement with MFI for the exclusive use of MFI's proprietary methods, trade dress, and trademarks related to market-research services in Ohio, Kentucky, and Indiana. McGinnis operated a business called Message Factors/Cincinnati under the licensing agreement. In June 2000, MFI canceled the license agreement. In October of 2003, MFI sued Message Factor/Cincinnati and McGinnis for, among other things, breach of the license agreement and "misappropriation" of trade dress, trademarks, and proprietary methods.

{¶ 4} In July 2000, McGinnis changed Message Factors/Cincinnati's name to Factfinder Marketing Research, Inc. After notification of the lawsuit, Factfinder and McGinnis sought representation from Westfield under a business owner's policy effective during the period from December 19, 1999, to December 20, 2002. They argued that MFI had sought damages for an "advertising injury." Westfield agreed to defend them pursuant to a reservation of rights, which enabled it to file a declaratory-judgment action asking the trial court to declare that Factfinder and McGinnis were not entitled to coverage under the policy.

{¶ 5} Factfinder and McGinnis filed a counterclaim against Westfield seeking a declaration that there was coverage under the policy. Westfield moved for summary judgment, as did Factfinder and McGinnis. The trial court granted Westfield's motion and declared that there was no coverage under the policy for the claims brought against Factfinder and McGinnis by MFI. This appeal followed.

## Review of Insurance Claims

{¶ 6} The trial court was required to consider the allegations in the MFI complaint in light of the coverage provisions and exclusions in the policy issued by Westfield to Factfinder.[1]

## The Policy

{¶ 7} The Insurance Services Office ("ISO") is an organization that drafts the standard-form commercial general-liability policy. The ISO first introduced standard-form coverage for "advertising injury" in 1973.[2] The ISO amended the policy language for advertising-injury coverage in 1986 and 1998. The Westfield policy at issue in this case contains the 1986 amended policy language.

---

1. See *Westfield Cos. v. O.K.L. Can Line,* 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, at ¶ 8.

2. See 5 McCarthy, Trademarks & Unfair Competition (4th Ed.2006) 33–9, Section 33:5.

{¶ 8} The liability portion of the relevant policy requires Westfield to defend Factfinder against any "suit" seeking "damages because of * * * advertising injury" where that "advertising injury is caused by an offense committed in the course of advertising [Factfinder's] goods, products or services[,] but only if the offense was committed in the 'coverage territory' during the policy period."

{¶ 9} The policy defines "advertising injury" as an injury arising out of one or more of the following offenses: "a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; b. Oral or written publication of material that violates a person's right of privacy; c. Misappropriation of advertising ideas or style of doing business; or d. Infringement of copyright, title or slogan."

{¶ 10} MFI filed the lawsuit against McGinnis and Factfinder[3] in federal district court. The complaint alleged that MFI and McGinnis, both providers of market research, entered into a written license agreement in 1989. Subject to terms and conditions set out in the agreement, MFI granted McGinnis "[a]n exclusive license to utilize Licensed Marks, proprietary services, the know-how, technology, methods, standards and procedures of MFI for the purposes of promoting, advertising and marketing market research, survey, and evaluation" in Ohio, Kentucky, and Indiana. As consideration, McGinnis agreed to pay a licensing fee to MFI and to exclusively use MFI's licensed technology and marks.

{¶ 11} The complaint further alleged that on at least nine occasions in 1999 and 2000, McGinnis had violated the license agreement by providing market-research services that used the licensed material without paying a licensing fee. The resulting reports had "the appearance, feel, content, manner of presentation, manner of analysis and terminology of MFI reports" and incorporated MFI's "trade dress." "In using MFI's trademark, service mark, trade dress, and trade name in connection with his own work product and reports made without the permission of MFI and beyond the scope of the License Agreement, McGinnis acted with the purpose of taking the benefit of the favorable reputation and valuable goodwill which MFI has established in its trademark, service mark, trade dress and trade name, and causing his work product and reports to be palmed off as made, authorized, sponsored, or endorsed by, originated with, or otherwise connected with MFI."

{¶ 12} MFI sought several types of damages. First, MFI sought payment of the licensing fees. Second, MFI sought damages for its loss of good will and reputation caused by the palming off. Third, MFI sought to disgorge McGinnis of his "improperly obtained fees and profits." MFI also sought an injunction to

---

3. The complaint referred to Factfinder as "Message Factors/Cincinnati, Inc.," which is the name Factfinder and McGinnis formerly operated under.

restrain McGinnis from future "misappropriat[ion]" of MFI's "technologies, know-how, methods, service marks, trademarks, trade dress, trade names or other items protected by the [licensing] Agreement or the law of the United States or of Ohio."

{¶ 13} MFI did not specifically refer to the federal or state intellectual-property laws it was relying upon, but the complaint set out a claim for trade-dress/trademark infringement under the federal trademark statute, the Lanham Act.[4] The complaint also set out a claim for the misappropriation of trade secrets and breach of contract.

### Appellate Review of the Trial Court's Decision

{¶ 14} Factfinder and McGinnis argue that the trial court erred in granting summary judgment to Westfield on Westfield's duty to defend them in the MFI action. In this case, the parties do not dispute any underlying facts. We are presented only with a question of law concerning the correct construction of the Westfield insurance policy. We review this issue de novo.[5]

{¶ 15} Under Ohio law, an insurer's duty to defend against an insured claim is broader than the duty to indemnify. In determining the duty to defend, a court reviews the allegations in the complaint and any allegations arising after the filing of the complaint.[6] Where the allegations state a claim that is potentially or arguably within the policy coverage, the insurer must accept the defense of the claim, regardless of the ultimate outcome of the action or the insurer's liability to the insured.[7] The insurer must initially accept the defense of a claim even where there is "some doubt" about whether a theory of recovery within the policy coverage has been pleaded.[8] When an insurer must provide a defense on one claim, it must defend the insured on all the other allegations, regardless of whether they are related to the insurance-policy coverage.[9] Conversely, a duty to defend does not attach when the conduct alleged is indisputably outside the scope of coverage.[10]

---

4. Section 1051 et seq., Title 15, U.S.Code.

5. *Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 5–6.

6. *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 179, 9 OBR 463, 459 N.E.2d 555.

7. See id. at syllabus.

8. Id.

9. See *Sharonville v. Am. Employers Ins. Co.* at ¶ 13.

10. Id.

{¶ 16} An insurance policy is a contract, and the role of the court when asked to interpret the terms of any contract is to give effect to the intention of the parties.[11] We examine the contract as a whole, presuming that the parties' intent is reflected in the policy language.[12] "Common words in a contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement."[13] If the language of an insurance contract is ambiguous, courts will interpret the ambiguity against the drafter of the policy, generally the insurer.[14]

{¶ 17} The trial court did not explain the basis for the summary judgment, but Westfield had argued (1) that the MFI complaint did not assert a claim for an "advertising injury" under the insurance policy, (2) that even if it did assert a claim for an "advertising injury," MFI did not allege that the injury was "committed in the course of and was causally connected to" the advertising of Factfinder's goods, products, or services, and (3) that, in any event, two exclusions prohibited coverage.

{¶ 18} To resolve this controversy, we must review the MFI complaint and determine only whether the complaint (1) stated a claim for an offense covered under the advertising-injury provisions of the insurance policy and (2) alleged that the advertising injury was caused by Factfinder in the course of advertising. If these two conditions were met, then we must determine whether any exclusion applied.

## Analysis

{¶ 19} MFI alleged claims for trade-dress infringement, trademark infringement, and misappropriation of trade secrets. "Trade dress" refers to " 'the total image or overall appearance of a product,' including size, shape, color, texture and graphics."[15] "Trademark" is defined as "any word, name, symbol, or device or any combination thereof" used by a person "to identify and distinguish his or her own goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is

---

11. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9–11.

12. Id. at ¶ 11.

13. *Cincinnati Ins. Co. v. Anders,* 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, ¶ 34.

14. *Westfield v. Galatis* at ¶ 13.

15. See *AM Gen. Corp. v. DaimlerChrysler Corp.* (C.A.7, 2002), 311 F.3d 796, 814, quoting *Rose Art Industries, Inc. v. Swanson* (C.A.3, 2002), 235 F.3d 165, 171.

unknown." [16]  The protection of trade dress and trademarks serves to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." [17]

{¶ 20} A trade secret is secret information that is the subject of efforts to keep it from being generally known and that "derives independent economic value" from not being generally known.[18]

{¶ 21} Factfinder and McGinnis argued that MFI's allegations of trade-dress and trademark infringement and misappropriation of trade secrets triggered coverage under the advertising-injury provision for the "misappropriation of advertising ideas or style of doing business."  "Misappropriation of advertising ideas or style of doing business" is not defined in the policy or under Ohio law. Because the terms are found in the advertising-injury liability portion of the policy, the terms must be interpreted as having a connection to advertising.

{¶ 22} The "misappropriation of advertising ideas or style of doing business" provision, as part of the 1986 standard policy language, has been interpreted by courts in other jurisdictions.  These courts have generally found that trade-dress and trademark infringement can be covered under the policy as an advertising injury caused by the "misappropriation of advertising ideas or style of doing business," where the misappropriated intellectual property draws the public's attention to the product and makes the source of the product readily identifiable.[19]

{¶ 23} Some courts have defined "advertising idea" to mean "any idea or concept related to the promotion of a product to the public." [20]  The provision has been held to trigger coverage where the insured was sued for trademark or trade-dress infringement.[21]

{¶ 24} Some courts have interpreted "style of doing business" as including "the manner in which a company promotes, presents, and markets its

---

16.  Section 1127, Title 15, U.S.Code.

17.  *Two Pesos v. Taco Cabana* (1992), 505 U.S. 763, 774, 112 S.Ct. 2753, 120 L.Ed.2d 615.

18.  R.C. 1333.61(D).

19.  See 5 McCarthy, Trademarks & Unfair Competition (4 Ed.2006) 33–28 to 33–30, Section 33:10.  See, also, Annotation, Advertising Injury Insurance (2002), 98 A.L.R.5th 1, Section 12(a).

20.  *Hyman v. Nationwide Mut. Fire Ins. Co.* (C.A.11, 2002), 304 F.3d 1179, 1188;  see, also, *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins.* (D.Fla.2001), 165 F.Supp.2d 1332, 1339.

21.  Id.

products to the public." [22]  "Style of doing business" encompasses "the physical appearance of a product—the ornamental features that distinguish it from similar products and identify its source." [23]  The provision has been held to trigger coverage where the insured was sued for trade-dress or trademark infringement. [24]

{¶ 25} The Sixth Circuit Court of Appeals in *Advance Watch Co. v. Kemper Natl. Ins. Co.* [25] held that trade-dress and trademark infringement were not covered as a "misappropriation of advertising ideas or style of doing business." The court was interpreting the scope of "advertising injury" coverage under Michigan insurance law. [26]  The *Advance Watch* court relied in part on the fact that trade-dress and trademark infringement are specific, statutory torts, separate from the common law tort of misappropriation.  But this restrictive holding has been criticized as ignoring the ordinary meaning of the term "misappropriation." [27]  The word "misappropriate" commonly means "to appropriate wrongly." [28]

{¶ 26} In this case, we resolve this ambiguity in the provision in favor of insurance coverage, as required under Ohio law.  Thus, we decline to follow the holding of *Advance Watch* because the common meaning of "misappropriation" incorporates the idea of trade-dress and trademark infringement.

{¶ 27} MFI expressly alleged that McGinnis had wrongly used its trade dress and trademarks in materials presented to clients and had misled the clients as to the origin of the products and services.  We conclude that these allegations arguably fall under the misappropriation of advertising ideas or style of doing business, as it has come to be defined.

{¶ 28} Conversely, MFI's allegation of trade-secret misappropriation does not trigger coverage under the "misappropriation of advertising ideas or style of doing business" provision.  MFI alleged that the trade secrets involved

---

22.  *Hyman* at 1189.

23.  *Adolfo House* at 1339.

24.  *Hyman*, 304 F.3d at 1189;  *Adolfo House*, 165 F.Supp.2d at 1339.

25.  (C.A.6, 1996), 99 F.3d 795.

26.  Id. at 803.

27.  See *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.* (C.A.3, 1999), 193 F.3d 742, 747;  *Cincinnati Ins. Cos. v. Pestco, Inc.* (D.Pa.2004), 374 F.Supp.2d 451, 458–459.

28.  Webster's Third New International Dictionary, Unabridged (1993), 1442.

proprietary methods of analyzing market research and not secret ideas for advertising the products and services.

{¶ 29} But Westfield's duty to defend arises even if only some of the claims fall within the coverage terms. Because the trade-dress- and trademark-infringement claims fall under the coverage provided for an advertising injury, we hold that Factfinder and McGinnis have satisfied the first prong of our analysis.

## Advertising Nexus

{¶ 30} The harder question is whether MFI alleged that McGinnis caused the advertising injury by misappropriation committed in the course of advertising Factfinder's services or products. Under the policy, the advertising injury must have a causal connection with advertising activities. "Advertising" is not defined in the policy but is defined in Webster's Dictionary as "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public esp[ecially] by means of printed or broadcast paid announcements." [29]

{¶ 31} MFI's complaint does not use the words "advertising" or "marketing." But Factfinder and McGinnis argue that trade-dress and trademark infringement inherently involve advertising because there can be no trade-dress or trademark infringement without the occurrence of advertising. The court in *Poof Toy Prod. v. United States Fid. & Guar. Co.*[30] came to the same conclusion, explaining that this "results from a required element in every trademark/trade dress case, that the mark or dress is likely to cause confusion to the consumer or deceive the consumer as to the origin or manufacturer of the goods. To have (or potentially cause) this effect, one must clearly advertise (announce to the intended customers) the mark or dress." [31]

{¶ 32} In *Westfield Cos. v. OKL Can Line*,[32] this court addressed the same issue in dicta, stating that we agreed in principle with this "abstract concept" of intellectual property law. We were not required to adopt this concept, because the insurance contract in that case specifically defined "advertisement" as "a notice" that was intended to attract customers.[33] The marketing of the allegedly infringing products on a website satisfied this definition.

---

29.  Webster's Third New International Dictionary, Unabridged (1993), 31.

30.  (D.Mich.1995), 891 F.Supp. 1228.

31.  (Citation omitted.) Id. at 1236.

32.  155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, at ¶ 16.

33.  Id.

{¶ 33} In this case, we adopt the *Poof Toy*'s conclusion that trade-dress/trademark infringement necessarily involves advertising. But that is not the end of our analysis. There must be a limit to the "inherently advertising rule" to avoid coverage in circumstances clearly not anticipated by the parties. The insurance policy expressly requires a nexus between the advertising activity and the advertising injury.

{¶ 34} We hold that the nexus exists in this case. MFI alleged that McGinnis's use of its trade dress and trademarks in reports and services provided to clients caused a "palming off" injury at least nine times, and MFI further alleged that the palming off was ongoing and would "irreparably damage MFI's business reputation and goodwill."

{¶ 35} Thus, McGinnis, through Factfinder, presented the infringing trade dress and trademarks to a segment of the purchasing public, and it was this "advertising" that is allegedly causing MFI's damages, at least in part.

### Exclusions

{¶ 36} Having determined that the alleged Lanham Act violations arguably fall within the policy's "advertising injury" coverage, we must now decide whether any exclusions in the policy preclude coverage. Westfield relied on two exclusions in its motion for summary judgment, the "knowledge of falsity" and "breach of contract" exclusions. We address each in turn.

{¶ 37} The knowledge-of-falsity exclusion bars coverage for advertising injury "arising out of oral or written publication of material by or at the direction of the insured with knowledge of its falsity." Westfield claims that McGinnis had to know that he had no right to represent to others that Factfinder was using or continuing to use MFI's services after MFI terminated the licensing agreement in 2000.

{¶ 38} We hold that the exclusion does not apply for two reasons. First, under Ohio law, "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." [34] The "oral or written publication of material" language of this exclusion mimics the language in the first two definitions of an advertising injury. This same language is absent from the second two definitions of an advertising injury, including an advertising injury arising from the "misappropriation of advertising ideas or style of doing business." We decline to hold that this exclusion clearly applies to the "misap-

---

**34.** (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.

propriation of advertising ideas or style of doing business" liability provision in the absence of the duplicate language.[35]

{¶ 39} Second, MFI alleged that McGinnis acted intentionally or *negligently* in infringing its trade dress and trademark. MFI could prevail on these Lanham Act claims without proving knowledge of the infringement.[36] Thus, Westfield would have to defend and potentially indemnify Factfinder and McGinnis for nonintentional infringement that fell outside of the exclusion.

{¶ 40} Next, we address whether the Lanham Act claims, which are based upon tort principles, are excluded under the breach-of-contract exclusion. The breach-of-contract exclusion bars coverage for advertising injury "arising out of breach of contract, other than the misappropriation of advertising ideas under an implied contract."

{¶ 41} The term "arising out of" has been interpreted broadly under Ohio law to mean "flowing from," "having its origin in," or "growing out of."[37] "The phrase indicates a requirement of a causal relationship but not one of proximate cause."[38]

{¶ 42} Applying this broad definition of "arising out of," we hold that the parties clearly intended to exclude coverage when the infringement causing the advertising injury also violated a written licensing agreement governing the same trade dress and trademarks. If the jury finds that Factfinder and McGinnis breached the licensing agreement and at the same time infringed, then the claim would not be covered for indemnification purposes. This exclusion would not apply to MFI's infringement allegations arising after the termination of the licensing agreement.

{¶ 43} But at this point in the litigation, we do not know what the jury will find. We do know that MFI has alleged an advertising injury that is potentially within the policy coverage. Therefore, Westfield must continue to defend Factfinder and McGinnis.

## Conclusion

{¶ 44} The trial court erroneously granted summary judgment for Westfield and denied summary judgment to Factfinder and McGinnis on the duty to defend. Thus, we sustain Factfinder and McGinnis's assignment of error and

---

**35.** See *Westfield Cos. v. O.K.L. Can Line* at ¶ 26.

**36.** Id. at ¶ 33.

**37.** Id. at ¶ 19, citing *Stickovich v. Cleveland* (2001), 143 Ohio App.3d 13, 37, 757 N.E.2d 50.

**38.** Id.

reverse the judgment of the trial court. We also enter judgment in favor of Factfinder and McGinnis on the duty to defend.

Judgment accordingly.

GORMAN, P.J., and PAINTER, J., concur.