[32 NYS3d 72]

ALLIED WORLD NATIONAL ASSURANCE COMPANY, Appellant, v
GREAT DIVIDE INSURANCE COMPANY et al., Respondents.

First Department, May 5, 2016

## APPEARANCES OF COUNSEL

*Shaub, Ahmuty, Citrin & Spratt LLP*, New York City (*Steven J. Ahmuty, Jr.* and *Tiffany A. Miao* of counsel), for appellant.

*Coughlin Duffy LLP*, New York City (*Justin N. Kinney* of counsel), for Great Divide Insurance Company, respondent.

*Finazzo Cossolini O'Leary Meola & Hager, LLC*, Morristown, NJ (*Robert F. Cossolini* of the New Jersey bar, admitted pro hac vice), and New York City (*Patrick A. Florentino* of counsel), for New York Marine and General Insurance Company, respondent.

### OPINION OF THE COURT

MOSKOWITZ, J.

In this appeal, we are called upon to decide whether claims asserted in an arbitration demand fell outside coverage provided under the insurer-defendants' policies, or fell within the scope of exclusions in those policies.

In December 2004, nonparty Hemisphere Resorts LLC, a real estate development firm, entered into a licensing agreement and a service agreement (together, the agreements) with nonparties IMG Worldwide Inc. and IMG Academies LLP (collectively, IMG). The agreements allowed Hemisphere to use IMG's trade names and trademarks, as well as its services, in connection with Hemisphere's development of a network of sports-oriented resort communities.

For consecutive policy periods from August 10, 2005 to August 10, 2012, plaintiff, Allied World National Assurance Company, and defendants, Great Divide Insurance Company, and New York Marine and General Insurance Company issued commercial general liability insurance policies to IMG with one-year policy periods. Each policy provided, among other things, coverage for personal and advertising injury liability; accordingly, each policy obligated the insurer to defend any "suit" (including an arbitration proceeding) seeking damages for a "personal and advertising injury." "Personal and advertising injury," in turn was defined as injury arising out of, among other things, false arrest, malicious prosecution, publication of defamatory or disparaging material, publication of material constituting violation of the right to privacy, copyright or trade dress violations, and using another's intellectual property in an advertisement.

As relevant to this appeal, the policies contained exclusions of coverage for personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" The policies also excluded coverage

for personal and advertising injury "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Finally, the policies excluded coverage for personal and advertising injury "arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'"

In July 2012, after disputes arose between Hemisphere and IMG with respect to the agreements, Hemisphere served IMG with a demand for arbitration. In the demand, Hemisphere sought a declaratory judgment as to the parties' rights and obligations under their agreements; specific performance of IMG's obligations under the agreements; and money damages for injuries that Hemisphere claimed to have suffered through IMG's alleged wrongful conduct, including breaches of contract and various torts.

In the breach of contract allegations, Hemisphere alleged that IMG violated the exclusivity provisions of the agreements by entering into a partnership with another business that Hemisphere deemed to be a "competing business" under the terms of the agreements. Further, Hemisphere claimed that IMG breached the exclusivity provisions of the agreements by trying to create its own competitive business in New York City in an area geographically near to a Hemisphere project. Hemisphere also alleged that IMG breached the agreements by failing to promote Hemisphere's business with potential partners and by representing to those entities not only that IMG and Hemisphere were not pursuing business together, but also that IMG and Hemisphere were involved in a dispute over the agreements.

In the tortious interference claims, Hemisphere alleged that IMG "knowingly and intentionally" interfered with Hemisphere's business relationship by, among other things, trying to open a competing business—the same conduct Hemisphere claimed constituted a breach of the agreements. Hemisphere also claimed that IMG knowingly and intentionally interfered with other business relationships by failing to promote Hemisphere's business with potential business partners, by stating that IMG and Hemisphere were not pursuing business together, and by revealing that IMG and Hemisphere were involved in a dispute concerning the agreements—again, the same conduct Hemisphere claimed constituted a breach of the agreements. As a result of IMG's conduct, Hemisphere claimed, it lost the opportunity to develop a resort property in New

Jersey. Finally, Hemisphere alleged that IMG "knowingly and intentionally" represented that it intended to perform its obligations under the agreements when it did not, in fact, actually intend to do so.

In August 2012, IMG tendered the defense of the arbitration proceeding to Allied World, Great Divide, and New York Marine. By letter dated September 10, 2012, New York Marine disclaimed coverage for IMG's claim. In so doing, New York Marine primarily relied on the personal and advertising injury exclusion for "material published prior to policy period," stating that "disputes arose between the parties on or about February 2011 and that IMG sent a demand letter about the claimed breaches on February 15, 2011" and thus, were alleged to have occurred before August 10, 2011—the inception of the New York Marine policy. New York Marine also specifically reserved all of its rights to further limit or disclaim any obligation to defend IMG based upon all the terms, conditions, definitions, and exclusions of its policy.

Likewise, by letter dated September 27, 2012 Great Divide disclaimed coverage for IMG's claim. First, Great Divide declined coverage "to the extent the breach-of-contract exclusion applies [because] Hemisphere's initiation of arbitration stems from IMG's alleged breach of the [agreements]." Second, Great Divide contended that "some" of IMG's alleged violations occurred after August 10, 2010, the expiration date of Great Divide's final policy. Great Divide's disclaimer also reserved the right to rely on any other terms or conditions of its policies.

In October 2012, Allied World initially disclaimed coverage for IMG because the policy excluded advertising and personal injury coverage arising out of breach of contract. Further, Allied World also reserved its right to disclaim coverage on any of the exclusions for advertising and personal injury coverage. In November 2013, however, Allied World reconsidered its position and agreed to defend IMG under a reservation of rights. Specifically, Allied World reserved "the right to withdraw from [IMG's] defense, as well as the right to seek reimbursement of amounts incurred prior to such withdrawal, to the extent that the investigation reveals that there is no coverage for this matter."

IMG ultimately settled the dispute by paying Hemisphere $3,250,000 and waiving IMG's counterclaims. Between August and December 2014, Allied World reimbursed IMG for defense costs totaling $2,178,170.27 in connection with the arbitration proceeding.

Allied World then filed this action against Great Divide and New York Marine, seeking a declaration that they were obliged to defend IMG in the arbitration proceeding because the demand for arbitration, by its claim that IMG tortiously interfered with Hemisphere's business relationships, contained allegations that fit within the "personal and advertising injury" coverage of their respective policies. Allied World further sought an order compelling Great Divide and New York Marine, under principles of equitable contribution, to reimburse Allied World for their equitable share of the $2,178,170.27 in defense costs that Allied World paid in connection with its defense of IMG in the arbitration proceeding.

Allied World filed a prediscovery motion for summary judgment, seeking a declaration that Great Divide and New York Marine were obliged to each reimburse Allied World $726,056.75 in past defense costs incurred on behalf of IMG in connection with the settled arbitration proceeding. New York Marine and Great Divide filed cross motions for summary judgment dismissing the complaint, arguing that the arbitration claims against IMG either did not fall within the applicable coverage or fell within various exclusions. The IAS court denied Allied World's motion and granted New York Marine's and Great Divide's separate cross motions.

IMG's headquarters are in Ohio, and therefore, no party disputes that Ohio law applies to this action. Therefore, we analyze the issues under the law of Ohio, not the law of New York. In so doing, we find that exclusions in Great Divide's and New York Marine's policies did, in fact, preclude coverage to IMG, and now affirm.

Under Ohio law, a plaintiff has the burden of proving that the arbitration demand at issue "potentially or arguably" alleges an offense within the scope of coverage in a defendant's insurance policy for "personal and advertising injury" (*City of Willoughby Hills v Cincinnati Ins. Co.*, 9 Ohio St 3d 177, 180, 459 NE2d 555, 558 [1984]; *see Sharonville v American Empls. Ins. Co.*, 109 Ohio St 3d 186, 191, 846 NE2d 833, 838 [2006]). If the plaintiff is able to sustain that burden, then the burden shifts to the defendant to show that the alleged offense falls within a policy exclusion (*see Continental Ins. Co. v Louis Marx & Co., Inc.*, 64 Ohio St 2d 399, 401-402, 415 NE2d 315, 317 [1980]).

Here, the allegations of tortious interference on the part of IMG, whether through defamatory or disparaging state-

ments, do potentially or arguably state an offense within the scope of coverage for personal and advertising injury liability. However, even if the arbitration demand implied defamation or disparagement, the exclusion for "knowledge of its falsity" still presents a bar to coverage, as the arbitration demand specifically alleged that IMG acted "knowingly and intentionally." Indeed, Hemisphere's allegation that IMG acted "knowingly and intentionally" is consistent with the requirements of Ohio law. Specifically, Ohio courts do not recognize a cause of action for negligent interference with contract or business relations, holding instead that tortious interference requires intentional conduct (*see Bauer v Commercial Aluminum Cookware Co.*, 140 Ohio App 3d 193, 199, 746 NE2d 1173, 1177 [Ohio Ct App 2000] [under Ohio law, the tortious interference with a business relationship "must be intentional because Ohio does not recognize negligent interference with a business relationship"]). Hence, any allegations of tortious interference on the part of IMG, whether through defamatory or disparaging statements or otherwise, can only be read to encompass conduct that was performed "knowingly and intentionally."

█ As to the breach of contract exclusion, Ohio courts employ an "arising out of" approach that bars coverage for advertising injury "arising out of breach of contract" (*Westfield Ins. Co. v Factfinder Mktg. Research, Inc.*, 168 Ohio App 3d 391, 404, 860 NE2d 145, 154 [Ohio Ct App 2006]). In turn, the term "arising out of" has been interpreted under Ohio law to mean "flowing from," "having its origin in," or "growing out of" (*id.* [internal quotation marks omitted]). Here, the alleged conduct supporting the tortious interference claim is the same alleged conduct supporting Hemisphere's breach of contract claim. Thus, when the arbitration demand is viewed in its entirety, the dispute between Hemisphere and IMG was a contractual dispute, as the "personal and advertising injury" Allied World claims Hemisphere suffered as a result of IMG's actions arose out of a breach of contract. Coverage for the dispute is therefore excluded under Great Divide and New York Marine's policies.

Finally, Allied World argues for the first time on appeal that Great Divide and New York Marine waived their rights to assert the exclusion for knowledge of falsity. Even assuming that we could consider this argument because it raises a purely legal argument that appears on the face of the record and could not have been avoided by the motion court (*see Vanship Holdings Ltd. v Energy Infrastructure Acquisition Corp.*, 65 AD3d

405, 408 [1st Dept 2009]), the argument is without merit. Great Divide and New York Marine did not waive their rights to assert the "knowledge of falsity" exclusion, as their disclaimer letters specifically reserved their rights as to all the terms and conditions of the policies (*see Insurance Co. of N. Am. v Travelers Ins. Co.*, 118 Ohio App 3d 302, 322, 692 NE2d 1028, 1040-1041 [1997]).

We have considered Allied World's remaining contentions and find that they are without merit.

Accordingly, the order and judgment (one paper), of the Supreme Court, New York County (Arthur F. Engoron, J.), entered October 27, 2015, denying plaintiff's motion for summary judgment, granting defendants' separate cross motions for summary judgment, and declaring that defendants had no duty to defend their insured, IMG, in an underlying arbitration proceeding, and that defendants have no duty to reimburse plaintiff for defense costs incurred in connection with its defense of IMG in that proceeding, should be affirmed, with costs. The appeal from the order of the same court and Justice, entered October 2, 2015, which denied plaintiff's motion for summary judgment and granted defendants' cross motions for summary judgment, should be dismissed, without costs, as subsumed in the appeal from the judgment.

MAZZARELLI, J.P., RENWICK, KAPNICK and KAHN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered October 27, 2015, affirmed, with costs. Appeal from order, same court and Justice, entered on or about October 2, 2015, dismissed, without costs, as subsumed in the appeal from the judgment.