[Cite as *Fairless v. Acuity*, 2022-Ohio-10.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JOSEPH FAIRLESS, | : | APPEAL NO. C-210165 |
| | | TRIAL NO. A-1800263 |
| and | : | |
| BAYBERRY CROSSING, LLC, | : | *O P I N I O N.* |
| Plaintiffs-Appellees/Cross-Appellants, | : | |
| vs. | : | |
| ACUITY, A MUTUAL INSURANCE COMPANY, | : | |
| | : | |
| Defendant-Appellant/Cross-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: January 5, 2022

*Stagnaro, Saba, & Patterson Co., LPA, Jeffrey M. Nye* and *Joshua Smith*, for Plaintiffs-Appellees/Cross-Appellants,

*Lewis, Brisbois, Bisgard & Smith LLP, Judd R. Uhl* and *Katherine L. Kennedy*, for Defendant-Appellant/Cross-Appellee.

**ZAYAS, Presiding Judge.**

{¶1} This case concerns an insurance coverage dispute in the context of the duty to defend. Defendant-appellant/cross-appellee Acuity, A Mutual Insurance Company, ("Acuity") brings this appeal to challenge the trial court's grant of summary judgment in favor of plaintiffs-appellees/cross-appellants Bayberry Crossing, LLC, ("Bayberry") and Joseph Fairless ("Fairless"), arguing in a sole assignment of error that the trial court erred in determining that it had a duty to defend the underlying action. Plaintiffs-appellees/cross-appellants Bayberry and Fairless bring their cross-appeal to challenge the trial court's award of damages, arguing in a sole assignment of error that the trial court erred in declining to award them their reasonable attorney fees and costs for the present litigation. For the following reasons, we overrule both assignments of error and affirm the judgment of the trial court.

### Facts

*Background Information*

{¶2} In 2016, Gavin Connor filed a complaint against Brookmeadow, LTD., ("Brookmeadow") alleging that, on or about November 3, 2014, he fell and suffered injury due to a dangerous condition on the premises at 15 Montgomery Way, Amelia, Ohio.

{¶3} On July 5, 2017, Brookmeadow filed a third-party complaint against Bayberry and Fairless, alleging claims for indemnity, contribution, and negligence. The relevant allegations from the complaint are:

> 3. [Conner] filed his complaint against Defendant/Third Party
> Plaintiff Brookmeadow, Ltd., * * * in the Clermont County Court of
> Common Pleas, * * * claiming damages resulting from personal

injuries allegedly sustained at the property located at 15 Montgomery Way, Amelia, Ohio, 45102 (hereinafter "Premises").

4. [Conner's] Complaint alleges that on or about November 3, 2014 he sustained personal injuries as the result of the failure of Defendant/Third-Party Plaintiff's [sic] to properly maintain the Premises at 15 Montgomery Way, Amelia, Ohio 45102.

5. On or about June 5, 2013, Third Party Plaintiff entered into a Lease with Option to Purchase Agreement with Third-Party Defendant, Joe Fairless.  A true and accurate copy of the Lease with Option to Purchase Agreement (hereinafter "Lease") is attached hereto as Exhibit 1.

6. Upon information and belief, on or about July 12, 2013, Third-Party Defendant Joe Fairless assigned his interest in the Lease to Bayberry Crossing, LLC. (*See* Contract for Sale attached hereto as Exhibit 2).

7. The Lease required Third-Party Defendants Bayberry Crossing, LLC and Joe Fairless to maintain the Premises in good repair and condition. (*See* Exhibit 1).

8. The Lease required Third-Party Defendants Bayberry Crossing, LLC and Joe Fairless to perform all necessary repairs and maintenance in order to bring the Premises in compliance with all laws, ordinances and regulations and other governmental orders.

9. Upon information and belief, Bayberry Crossing, LLC, was the Lessor, operator and manager of Bayberry Apartments, 15

3

Montgomery Way, Amelia, Ohio 45102 at the time Plaintiff alleges he sustained personal injuries on the Premises.

{¶4} The "Lease with Option to Purchase Agreement" and the contract for sale, entitled "Purchase, Sale, and Assignment Agreement," were attached and incorporated into the complaint.

{¶5} The "Lease with Option to Purchase Agreement" shows that, on June 5, 2013, Brookmeadow, as lessor and Fairless, as lessee, entered into a 53-month-and-two-day lease agreement for the property located at 15 Montgomery Way, Amelia, Ohio. The property was a 168-unit apartment complex known as Bayberry Crossing. Under the agreement, Fairless was to pay monthly rent to Brookmeadow and was to assume "all obligations under all leases and rental agreements with existing tenants at the Premises." The lease had the following relevant provisions:

11. Maintenance and Repair: Lessee, at its sole discretion, shall keep and maintain the Premises and buildings and improvements and all other portions of the Premises (including, but not limited to, all heating, air conditioning, plumbing and electrical equipment and apparatus, driveways, parking areas and landscaping) in good repair and condition and shall make all repairs, replacements and renewals, whether structural or non-structural, foreseen or unforeseen, ordinary or extraordinary, interior or exterior, necessary to put or maintain the Premises in that state of repair and condition. Lessee expressly waives the right to (a) require lessor to maintain, repair or rebuild all or any part of the Premises, or (b) to make repairs at the expense of Lessor pursuant to any legal requirement, contract, agreement, covenant, condition or restriction at any time in effect.

4

\* \* \*

14. Insurance: Lessee shall, during the Term, keep in force and effect such insurance as Lessee deems appropriate, with coverage and limits no less than as required under the mortgage. The policy shall name Lessor and Lender as additional insureds, and shall provide that the insurer may not cancel or change the insurance coverage in any respect without first giving Lessor and Lender ten (10) days prior written notice. Lessee shall pay for all insurance coverage related to the Premises. A copy of the policy or a certificate of insurance shall be delivered to Lessor on or before the Commencement Date and whenever replaced. In the event of loss, any insurance proceeds payable by reason of such loss shall be paid pursuant to the Loan Documents. Lessee covenants and agrees that it will neither do nor permit to be done any act or thing on the Premises or elsewhere which will invalidate any insurance on the Premises or increase the premiums for insurance thereon.

\* \* \*

23. Conditional Assignment of Rents and Leases: Beginning on the Commencement Date and continuing during the Term so long as Lessee is not in default under the Lease, Lessor authorizes Lessee to assume the management and operation of the Premises, including collection of rents and income under all currently existing and future tenant leases, rents, and security deposits for apartments located on the Premises during the entirety of the Term. Lessee's rights under this Section shall immediately terminate upon any default by Lessee.

5

* * *

38. Miscellaneous: b. Heir and Assigns: This lease with Option to Purchase Agreement shall not be assigned by Lessee without the prior consent of the Lessor, such consent shall not be unreasonably withheld. This Lease with Option to Purchase Agreement shall be binding on and inure to the benefit of Lessee and Lessor and their respective heirs and assigns, successors, administrators, trustees, representatives and executors.

{¶6} The "Purchase, Sale and Assignment Agreement," shows an agreement from 2016 which purports to sell the property to "15 Montgomery Way LLC." The agreement listed Bayberry as the "seller," Fairless as the "original lessee," and Brookmeadow as the "fee owner." Of relevance, the agreement asserted that Fairless assigned all his interest in the "Lease Option Agreement" to Bayberry on or about July 12, 2013. Additionally, the agreement stated that the property was "operated" by Bayberry.

*The Insurance Policy*

{¶7} A "Commercial General Liability Coverage" policy was in place with Acuity at the time of the alleged injury. On the first page of the policy, the Renewal Declarations page, it lists "BROOKMEADOW LTD AN OHIO LLC DBA BAYBERRY CROSSING" as the "First Named Insured."

{¶8} Per the policy, the words "you" and "your" refer to the "Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The words "we," "us," and "our" refer "to the Company providing the insurance.

6

**{¶9}** Section I concerns coverages under the policy. In relevant part, the coverage A section states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury* or *property damage* to which this insurance does not apply.

(Emphasis sic.)

**{¶10}** Section II concerns who is an insured under the policy. In relevant part, this section lists the following as insured:

> 1.c. If you are designated in the Declarations as: A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
> 2.b. Any person (other than your *employee*) or *volunteer worker* or any organization while acting as your real estate manager.

(Emphasis sic.)

**{¶11}** "Real estate manager" is not defined in the policy. Later in the policy, there are two amendments to Section II, which are entitled "Additional Insured." The first is for the "mortgagee," Union Central Life Insurance Company. The second is for the "Co-Owner of Insured Premises," "Bayberry Inc." The address listed for "Bayberry Inc" is 15 Montgomery Way, Amelia, Ohio. It states that Section II is

"amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as co-owner of the premises shown in the Schedule."

*Outcome of the Underlying Suit*

{¶12} After several months of communication between the parties regarding whether Acuity would provide coverage to Fairless, Brookmeadow voluntarily dismissed the third-party complaint against Bayberry and Fairless on September 26, 2017, after reaching a settlement with the original plaintiff. On October 17, 2017, counsel for Fairless sent a letter to Acuity demanding payment of all attorney fees and expenses incurred in the matter in the amount of $5,399.13. The letter also informed Acuity that Fairless intended to pursue all remedies available to him if payment was refused, including but not limited to a declaratory judgment action and claims of bad faith.

**Procedural History**

{¶13} On January 15, 2018, Fairless filed a complaint against Acuity, asserting claims for a declaratory judgment, breach of contract, and lack of good faith. With leave of court, Fairless filed an amended complaint on August 22, 2018, which added Bayberry as an additional plaintiff.

{¶14} On June 28, 2019, Acuity filed a motion for summary judgment, arguing that the insurance contract did not provide coverage for the third-party claims. That same day, Fairless and Bayberry filed a joint motion for summary judgment on counts I and II, arguing that the policy and the allegations in the underlying third-party complaint, taken together, "make clear that Acuity owed Plaintiffs a duty of defense and breached that duty when it refused to provide or reimburse Plaintiffs for the same." In an affidavit attached to Fairless and Bayberry's

joint motion for summary judgment, Fairless averred that he is the managing member of Bayberry and that he obtained the insurance policy with Acuity pursuant to his obligations under the lease agreement and made all premium payments. On March 10, 2020, the trial court granted the plaintiffs' motion for summary judgment on counts I and II, finding that Acuity was required to defend Fairless and Bayberry because the underlying suit "did arguably or potentially bring an action within the insurance coverage provision of Acuity's policy."

{¶15} On September 25, 2020, plaintiffs filed a motion for an award of damages and attorney fees as to counts I and II. Included with the motion was an affidavit of Joshua Smith that stated that attorney fees and expenses in the amount of $4,121.63 were charged to Fairless and Bayberry for defense of the third-party complaint. The affidavit also claimed that attorney fees and expenses in the amount of "$35,337,57" [sic] were charged to Fairless and Bayberry for the investigation, preparation, and prosecution of the present litigation. The affidavit incorporated invoices and time reports that were attached to the affidavit. On February 18, 2021, the trial court entered an order for an award of attorney fees in the amount of $4,121.63 to Fairless and Bayberry. The court found that "at this stage" attorney fees were limited to fees incurred in defense of the third-party complaint.

{¶16} On March 5, 2021, Acuity filed a notice of appeal. On March 9, 2021, plaintiffs filed their notice of cross-appeal. Plaintiff's claim for lack of good faith, which seeks compensatory and punitive damages, remains pending in the trial court.

## Law and Analysis

### Defendant-Appellant's Assignment of Error

{¶17} Acuity raises a sole assignment of error that the trial court erred in determining that Acuity had a duty to defend the underlying action. We review a

grant of summary judgment de novo. *City of Cincinnati v. Metro. Design & Dev., LLC*, 1st Dist. Hamilton No. C-170708, 2019-Ohio-364, ¶ 14, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶18}** "An insurance policy is a contract." *William Powell Co. v. OneBeacon Ins. Co.*, 2020-Ohio-5325, 162 N.E.3d 927, ¶ 26 (1st Dist.), citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. "When presented with an issue of contract interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Id.*, citing *Galatis*. " 'We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy.' " *Id.*, quoting *Galatis*. "When the language of a contract is clear, we may look no further than the writing itself to find the intent of the parties." *Id.*, citing *Galatis*.

**{¶19}** "Under Ohio Law, an insurer's duty to defend against an insured claim is significantly broader than the duty to indemnify." *Metro. Design* at ¶ 15, citing *Westfield Ins. Co. v. Factfinder Marketing Research*, 168 Ohio App.3d 391, 2006-Ohio-4380, 860 N.E.2d 145 (1st Dist.). "In determining the duty to defend, a court reviews the allegations in the complaint and any allegations arising after the filing of the complaint." *Id.*, citing *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179, 459 N.E.2d 555 (1984). "Where the allegations state a claim that is potentially or arguably within the policy coverage, the insurer must accept the defense of the claim regardless of the ultimate outcome of the action or the insurer's liability to the insured." *Id.*, citing *Willoughby Hills*. "But a duty to defend does not attach when the conduct alleged is indisputably outside the scope of coverage." *Id.*, citing *Willoughby Hills*.

**{¶20}** Here, the policy unambiguously states that Acuity had a duty to defend an insured from any suit seeking damages for bodily injury. The policy also unambiguously states that any organization acting as "real estate manager" for Brookmeadow was covered as an insured under the policy.

**{¶21}** Real estate manager is not defined in the policy so we must rely on its plain and ordinary meaning. *See Collins v. Auto-Owners Ins. Co.*, 2017-Ohio-880, 80 N.E.3d 542, ¶ 16 (12th Dist.), citing *Prudential Property & Cas. Ins. Co. v. Koby*, 124 Ohio App.3d 174, 177, 705 N.E.2d 748 (11th Dist.1997). The plain and ordinary meaning of "real estate" is "property in buildings and land." *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/real%20estate (accessed Dec. 17, 2021). The plain meaning of "manager" is "one that manages." *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/ dictionary/manager (accessed Dec. 17, 2021). Thus, the plain meaning of "real estate manager" is one who manages property in buildings or land.

**{¶22}** "When the insurer's duty is not clear from the complaint, but the allegations state a claim that is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept defense of the claim." *Westfield Cos. v. O.K.L. Can Line*, 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, ¶ 8 (1st Dist.), citing *Willoughby Hills,* 9 Ohio St.3d at 180, 459 N.E.2d 555.

**{¶23}** The third-party complaint alleged that "Upon information and belief, Bayberry Crossing, LLC, was the Lessor, operator *and manager* of Bayberry Apartments, 15 Montgomery Way, Amelia, Ohio 45102 at the time Plaintiff alleges he sustained personal injuries on the Premises." (Emphasis added.) The complaint also alleged that "Third-Party Defendants Bayberry Crossing, LLC and Joe Fairless

11

negligently maintained the premises located at 15 Montgomery Way, Amelia, Ohio 45102, which may have caused injury to Plaintiff." Thus, the allegations in the complaint expressly state a claim that is potentially or arguably within the policy coverage for Bayberry because it alleged that Bayberry was the manager of the apartments.

{¶24} Additionally, we consider the language in the lease because it was attached and incorporated into the complaint. *See* Civ.R. 10(C) ("A copy of a written instrument attached to a pleading is part of the pleading for all purposes."). Under the "Maintenance and Repair" provision, Fairless had "sole discretion" to "keep and maintain the Premises and buildings and improvements," and Fairless expressly waived the right to require Brookmeadow to maintain or repair the premises. Under the "Conditional Assignment of Rents and Leases" provision of the lease, Fairless was "authorized" as the Lessee "to assume the management and operation of the Premises, including collection of rents and income under all currently existing and future tenant leases, rents, and security deposits for apartments located on the Premises during the entirety of the term." Further, the lease had a provision that made the lease binding on the lessor, lessee, *and* their assigns. Thus, it is arguable that Fairless was responsible for management of the premises, and we cannot say that the suit against Fairless was indisputably outside the scope of coverage. Accordingly, the claims in the underlying complaint against Fairless and Bayberry were arguably within the policy coverage. Consequently, this assignment of error is overruled.

*Plaintiffs-Appellees' Cross-Assignment of Error*

{¶25} Fairless and Bayberry raise a sole assignment of error that the trial court erred in declining to award them their reasonable attorney fees for the *present*

12

litigation. Neither party disputes the trial court's award of attorney fees for the breach of the duty to defend the initial action. We review a trial court's award of attorney fees for an abuse of discretion. *Westfield*, 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, at ¶ 38.

> Ohio follows the 'American Rule,' which generally requires that an award of 'costs' in the form of attorney fees to a prevailing party in a civil action or proceeding must be based upon an express authorization of the General Assembly or upon a finding that the losing party has acted in 'bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons.' But attorney fees are allowable as 'damages' in breach-of-contract cases where the parties have bargained for this result and the breaching party's wrongful conduct has led to the legal fees being incurred.

(Citations omitted.) *Westfield* at ¶ 28.

{¶26} Thus, a trial court properly awards legal fees to an insured for the legal fees incurred *in defending an action* where the insurer contractually accepted the duty to defend the insured against third-party lawsuits to which coverage potentially applied. *See id.* at ¶ 29. However, where the parties do not contract to shift fees incurred for litigation of the dispute *between the insured and insurer*, the award of legal fees must "be authorized by legislation or by a finding that [the insurer] had acted in 'bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons.' " *Id.* at ¶ 30.

{¶27} Fairless and Bayberry cite to *Motorist Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 47, 294 N.E.2d 874 (1973), for the proposition that insureds are entitled to recovery of attorney fees to date based upon an insurer's breach of its duty

13

to defend. However, in *Westfield*, this court limited *Trainor*, and any subsequent cases relying on *Trainor*, and held that, when the parties do not contract to shift fees incurred for litigation of the dispute between the insured and insurer, attorney fees may only be awarded in a declaratory judgment/breach of contract action when the losing party has acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons. *Westfield* at ¶ 31-37. Stare decisis dictates that we adhere to this holding. *See William Powell Co. v. Onebeacon Ins. Co*, 2016-Ohio-8124, 75 N.E.3d 909, ¶ 31 (1st Dist.) ("Stare decisis 'provides continuity and predictability in our legal system, * * * thwart[s] the arbitrary administration of justice [and] provide[s] a clear rule of law by which the citizenry can organize their affairs.' " (Ellipses sic.)).

{¶28} The parties have not pointed to, and we do not find, any contractual provision which concerns fee shifting in a dispute between the insured and the insurer. Since the trial court reserved the claim that Acuity failed to act in good faith and has yet to rule on this issue, we cannot determine that the trial court abused its discretion in declining to award attorney fees in the present litigation "at this point in the case." Consequently, this assignment of error is overruled to the extent that Fairless and Bayberry argue that attorney fees should have been awarded for the period leading up to this point in the litigation, regardless of whether there was bad faith.

{¶29} Fairless and Bayberry also make the alternative argument that this court should hold that the attorney fees were recoverable because Acuity's actions establish bad faith, or vexatious, wanton, obdurate, or oppressive conduct. However, the trial court expressly reserved the determination of whether Acuity acted in bad faith. Consequently, this portion of the cross-assignment of error is premature and therefore we do not address it.

## Conclusion

{¶30} For the foregoing reasons, we overrule Acuity's assignment of error, overrule Fairless and Bayberry's cross-assignment of error in part, and hold the remaining portion of plaintiffs-appellees' cross-assignment of error is premature. Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.