[Cite as *Cincinnati v. Metro. Design*, 2019-Ohio-364.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, et al., | : | APPEAL NO. C-170708 |
| Plaintiffs, | : | TRIAL NO. A-1702620 |
| vs. | : | *O P I N I O N.* |
| METROPOLITAN DESIGN & DEVELOPMENT, LLC, | : | |
| BRIAN J. FOLKE, | : | |
| MATTHEW J. FENIK, and | : | |
| | : | |
| GEORGE B. FRANZ, | : | |
| Defendants/Third-Party Plaintiffs-Appellees, | : | |
| vs. | : | |
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | : | |
| Third-Party Defendant-Appellant. | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part and Reversed in Part

Date of Judgment Entry on Appeal: February 6, 2019

*Droder & Miller Co., L.P.A.*, *Bradley A. Powell*, *Jeffrey T. Kenney*, *Richard J. Rinear* and *Edward J. Collins*, for Third-Party Plaintiffs-Appellees,

*Isaac Wiles Burkholder & Teetor, LLC*, *Samuel M. Pipino* and *Dale D. Cook*, for Third-Party Defendant-Appellant.

**Mock, Presiding Judge.**

{¶1}    This case involves an insurance dispute.  In May 2017, there was a landslide in the Mt. Adams neighborhood of Cincinnati that caused damage to personal and public property and destabilized the hillside.  As a result, the city of Cincinnati filed a public-nuisance lawsuit against defendants/third-party plaintiffs-appellees Metropolitan Design and Development, LLC, and its three owners ("MDD"), seeking a temporary restraining order and a permanent injunction ordering MDD to repair and stabilize land in Mt. Adams where MDD had been developing property.  Because MDD's commercial general-liability carrier, third-party defendant-appellant Frankenmuth Mutual Insurance Company ("Frankenmuth"), refused to defend or indemnify MDD against the city's lawsuit, MDD filed a third-party complaint seeking, in part, a declaration that Frankenmuth had a duty to defend MDD against the city's lawsuit and an obligation to indemnify MDD under the terms of its commercial general-liability insurance policy ("the CGL policy").   Following a series of hearings, the trial court entered the following three judgments, all in favor of MDD:  a grant of partial summary judgment determining that Frankenmuth had a duty to defend MDD; a grant of attorney fees and expert-witness fees to MDD for the costs it had incurred in defending itself; and a judgment declaring that Frankenmuth must indemnify MDD under the terms of the CGL policy.

{¶2}    Frankenmuth now appeals, raising four assignments of error.  We reverse the award of attorney fees to Cohen, Todd, Kite & Stanford, LLC, the law firm

3

advising MDD on the likelihood of criminal prosecution resulting from the landslide, but affirm the trial court's judgment in all other respects.

**Procedure and Facts**

{¶3} MDD designs and constructs single-family residences, and has been developing property on Baum Street in Mt. Adams since 2006. In May 2017, MDD was developing the property at 406 Baum Street by engaging in excavation activities in order to install a retaining wall in the backyard. The backyards of the properties on Baum Street are adjacent to the backyards of properties on Oregon Street. Oregon Street runs parallel to and is upslope from Baum Street. The excavation activities at 406 Baum were taking place at the foot of the hillside between Oregon Street and Baum Street. In the early morning hours of May 3, 2017, following substantial rainfall, a landslide began uphill where land from the rear of the Oregon Street properties slid down the hill, damaging homes on Baum Street, destabilizing the hillside and causing damage to the properties on Oregon Street as well as the city's sewer system.

{¶4} The record is clear that on the day the landslide occurred, MDD notified Frankenmuth of the landslide, the property damage and potential for lawsuits. Frankenmuth told MDD that it would investigate the claims, but it was not assigning counsel. Therefore, MDD retained the law firm of Droder and Miller Co., L.P.A., to represent it. MDD and its counsel met with the city on May 7, 2017, to discuss the landslide, the resulting damage and need for immediate repairs. After that meeting, MDD notified Frankenmuth that the city was demanding that MDD immediately repair the hillside affected by the landslide, and that MDD was seeking coverage under its policy for this repair. The affected hillside included the northern

4

portion of the real property located at 400, 402, 404 and 406 Baum Street and the adjacent areas to the north of those properties (the Oregon Street properties).

{¶5} On May 11, 2017, the city issued a "Notice of Violation" to MDD regarding building code violations caused by the landslide. The notice required MDD to submit a "Comprehensive Re[-]stabilization Plan" approved by a professional geotechnical engineer by May 12, 2017. MDD immediately notified Frankenmuth of the violation notice. The next day, the city filed a lawsuit against MDD seeking a temporary restraining order, as well as preliminary and permanent injunctions ordering MDD to take emergency measures to correct the damage the landslide had caused.

{¶6} In its lawsuit, the city alleged that MDD's negligent undertaking of excavation activities at 406 Baum Street caused the landslide and resulting destabilization of the hillside. The city also stated MDD had "caused the City damage, including increased police, fire, health, emergency, and corrections costs for inspections and the cost of attempting to eliminate the hazard, damage to public infrastructure, and decreased tax revenues resulting from the depreciated value of the affected homes and all surrounding real estate."

{¶7} MDD immediately notified Frankenmuth of the city's complaint but Frankenmuth refused to provide a defense, indicating that it was still investigating the matter. Therefore, MDD appeared in court on the complaint with its personally-retained counsel. Following that appearance in court, MDD was ordered to immediately stabilize the hillside and to submit to the court financial statements from the past two years to allow the court to determine if MDD had the financial capacity to carry out the court's order.

5

{¶8} On May 16, 2017, the owners of the Oregon Street properties filed a motion to intervene and an intervening complaint claiming that MDD negligently caused the landslide that had damaged their properties. Three days later, Dr. Jagroop Mavi, the owner of the property located at 404 Baum Street, filed a separate lawsuit against MDD for damages to her property caused by the landslide. MDD notified Frankenmuth of both actions. By letters dated May 25 and June 2, Frankenmuth informed MDD that it would provide a defense for MDD against the actions filed by the Oregon Street property owners and Dr. Mavi. Two weeks later, Frankenmuth sent a letter to MDD declining to provide reimbursement or payment to MDD for the cost of repairing the hillside and the attorney fees and litigation costs that MDD had incurred in defending itself against the city's complaint.

{¶9} On June 20, 2017, the city amended its complaint, adding a claim that sought monetary relief for the damages the landslide had caused to the city's sewer system. Frankenmuth agreed to defend MDD against the city's amended complaint, but reiterated, by letter, its earlier denial of coverage of MDD's legal obligation to stabilize the hillside under the court-ordered "Re-stabilization Plan."

{¶10} Eventually, MDD filed a third-party complaint against Frankenmuth asserting three claims: (1) breach of contract for failure to defend; (2) a declaration that Frankenmuth had the obligation to indemnify MDD against all of the city's claims against it; and (3) bad faith. MDD then moved for partial summary judgment, arguing that Frankenmuth had a duty to defend MDD against the city's original complaint and, and by failing to do so, breached its insurance contract with MDD. Although Frankenmuth argued that the city's original complaint, which only sought injunctive relief and not compensatory damages, was not a "suit for damages"

under the CGL policy, the trial court determined that Frankenmuth had a duty to defend MDD against the city's original complaint, and entered a judgment granting partial summary judgment in favor of MDD. As a result of that determination, the trial court awarded MDD $122,755.50 in attorney fees for legal services performed by Droder & Miller, $11,096.40 in expert-witness fees and $5,832.25 in attorney fees for legal services performed by Cohen, Todd, Kite & Stanford, LLC, the criminal defense firm that had advised MDD on potential criminal liability resulting from the landslide.

{¶11} A few weeks later, the trial court held a bench trial on MDD's second claim, which sought a declaration that Frankenmuth was obligated under the CGL policy to indemnify MDD for the costs it incurred in stabilizing the hillside. At the trial, Frankenmuth argued that exclusion j.6 of the CGL policy excluded from coverage "that particular part of any property that must be restored, repaired, or replaced because the insured's work was incorrectly performed on it."

{¶12} A geotechnical expert testified at trial that the landslide began on the Oregon Street properties. Matthew Fenik, one of the owners of MDD, testified that MDD had never performed any work on those properties, and had only been working at 406 Baum Street at the time of the landslide. Frankenmuth argued that despite the fact that the landslide began on the Oregon Street properties, that land was connected to the land at 406 Baum Street, and thus, was one continuous piece of property. Therefore, MDD had been performing work on the portion of the hillside that needed to be stabilized.

{¶13} The trial court found that exclusion j.6 did not apply to exclude coverage for the stabilization of the hillside, and stated in its judgment entry that if it

accepted Frankenmuth's interpretation of exclusion j.6, the CGL policy would be rendered illusory. The trial court noted that exclusion j.6 was restrictive, and only worked "to exclude insurance coverage for property damage to 406 Baum Street because MDD incorrectly performed its excavation activities on 406 Baum Street." Thus, the trial court ordered Frankenmuth to pay MDD $542,868.92, which represents the cost associated with the "Comprehensive Re-stabilization Plan" that had been adopted by the court, and $25,841.25, which was the cost to stabilize the side yard of 408 Baum Street, as set forth in the stabilization plan. The court certified that there was no just reason for delay, and Frankenmuth appealed.

## Duty to Defend

{¶14} In its first assignment of error, Frankenmuth argues that the trial court erred by granting partial summary judgment in favor of MDD, which had argued that Frankenmuth had a duty to defend MDD against the city's original complaint. We review a grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and the evidence demonstrates that reasonable minds can come to but one conclusion, and that that conclusion is adverse to the party opposing the motion. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000); Civ.R. 56(C).

{¶15} Under Ohio law, an insurer's duty to defend against an insured claim is significantly broader than the duty to indemnify. *Westfield Ins. Co. v. Factfinder Marketing Research*, 168 Ohio App.3d 391, 2006-Ohio-4380, 860 N.E.2d 145 (1st Dist.). In determining the duty to defend, a court reviews the allegations in the

complaint and any allegations arising after the filing of the complaint. *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179, 459 N.E.2d 555 (1984). Where the allegations state a claim that is potentially or arguably within the policy coverage, the insurer must accept the defense of the claim regardless of the ultimate outcome of the action or the insurer's liability to the insured. *Id.* But a duty to defend does not attach when the conduct alleged is indisputably outside the scope of coverage. *Id.*

{¶16} At the time of the landslide, MDD was insured by Frankenmuth under policy number CPP 199 8638. The policy provides that Frankenmuth "will pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'property damage' " and that Frankenmuth has the "right and duty to defend the insured against any 'suit' seeking those damages."

{¶17} Here, the city's complaint alleges in count six that MDD's actions "caused the City damage, including * * * damage to public infrastructure * * *." This allegation explicitly sets forth a claim for damage to property, and thus, we hold that this claim is arguably covered under the CGL policy. We reject Frankenmuth's contention that the city's original complaint is outside the contracted coverage because the city did not specifically request compensatory damages for the property damage. Due to the nature of the property damage, which required a timely repair, the city chose to seek an injunction ordering MDD to stabilize the hillside and cover the cost for doing so. The cost of implementing the restabilization plan is the damages or sum of money that the city sought.

{¶18} Because the city's original complaint alleged property damage and sought an injunction ordering MDD to expend money to stabilize the hillside, the property damage caused by the landslide is arguably covered by the policy, and

Frankenmuth had a duty to defend MDD against the city's original lawsuit. The first assignment of error is overruled.

## Attorney Fees

{¶19} In its second assignment of error, Frankenmuth contends that as a matter of law it is not obligated to pay the attorney fees MDD incurred in the defense of the city's original lawsuit after July 1, 2017. We disagree in part.

{¶20} After reviewing the record, we hold that the award of attorney fees to MDD's personal counsel, Droder & Miller, is proper as a matter of law. *See Motorists Mut. Ins. Co. v. Trainor*, Ohio St.2d 41, 294 N.E.2d 874 (1973), syllabus (attorney fees are recoverable when an insurer wrongfully refuses to defend an action). Although Frankenmuth argues that the trial counsel it had assigned to represent MDD against the city's amended complaint was "up to speed" on all the issues by July 1, 2017, there is nothing in the record to indicate that Frankenmuth was defending MDD against the city's original complaint. A member of Droder & Miller testified at the hearing on attorney fees that the injunction litigation was still ongoing after July 1, 2017, and that Frankenmuth was still refusing to provide MDD with a defense to that litigation.

{¶21} Next, Frankenmuth argues that the trial court's award of attorney fees violates the "voluntary payments condition of the Frankenmuth policy." Voluntary-payment clauses preclude an insured from recovering costs or expenses that it voluntarily assumed to settle a claim without notice to or consent by the insurance company. That did not happen here. MDD notified Frankenmuth of the landslide and the city's lawsuit immediately, and only hired personal counsel after Frankenmuth had refused to defend it.

{¶22} Finally, the record demonstrates that the fees awarded to Droder & Miller for its defense of MDD against the city's original complaint only included time spent on MDD's defense against the city's original lawsuit, and did not include time spent on the coverage and bad-faith claims. A member of Droder & Miller testified that the firm was only seeking fees for the time spent defending MDD against the city's original complaint.

{¶23} Given that Brian Hurley, the expert witness on attorney fees in complex-insurance-litigation cases, testified that the amount of time spent by Droder & Miller on the defense of the city's original lawsuit as well as the fees charged were reasonable, we hold that the award of attorney fees to Droder & Miller in the amount of $122,755.50 was proper.

{¶24} But we reverse the award of attorney fees to Cohen, Todd, Kite & Stanford, the law firm advising MDD on the likelihood of criminal prosecution resulting from the landslide. The CGL policy specifically excludes coverage for any damage caused by criminal acts of the insured. The second assignment of error is sustained in part and overruled in part.

{¶25} In its third assignment of error, Frankenmuth contends that the award of expert-witness fees following the hearing on attorney fees was improper because those fees were not for the expert's opinion on the reasonableness of attorney fees, but instead for the expert's opinion on whether coverage for the landslide was provided under the CGL policy and the issue of bad faith. We are unpersuaded.

{¶26} Immediately after the fee hearing, MDD submitted Brian Hurley's bills, which covered services rendered by Hurley through October 5, 2017, the date of the fee hearing. Hurley's invoices specifically stated that the fees were related to the

issue of attorney fees. Because Frankenmuth has not demonstrated that the award of expert-witness fees was improper, we overrule the third assignment of error.

{¶27} Under the final assignment of error, Frankenmuth argues that the trial court erred by determining that the j.6 exclusion in the CGL policy did not apply to preclude coverage for the stabilization of the hillside.

{¶28} The trial court's decision regarding coverage is a question of law that we review de novo. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586. An exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). "[T]he insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.*, 45 Ohio St.3d 63, 65, 543 N.E.2d 488 (1989). When an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion. *See Continental Ins. Co. v. Louis Marx Co.*, 64 Ohio St.2d 399, 415 N.E.2d 315 (1980).

{¶29} Exclusion j.6 of the CGL policy provides that coverage is excluded for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Frankenmuth contends that the entire Mt. Adams hillside is an "organically merged, singular physical property[,]" and therefore, MDD had incorrectly performed work "on it." But MDD argues that the Mt. Adams hillside is made up of separate parcels of land, and that it was not requesting coverage for property damage done to the land where MDD had been excavating and building a retaining wall, but instead it was

requesting coverage for property damage done to other parcels of land on the hillside that it had not been working on and that were owned by third parties.

{¶30} In *Beaverdam Contracting, Inc. v. Erie Ins. Co.*, 3d Dist. Allen No. 1-08-17, 2008-Ohio-4953, an insured was hired to clear a parcel of land, but mistakenly cleared land belonging to a third party who was not the insured's client. The court rejected the insurance company's claim that an exclusion identical to the j.6 exclusion in the CGL policy applied, because the claim involved "accidental damage to the property of a third party who was not in any way involved with the contracted work project." *Id.* at ¶ 48. Here, MDD's work caused property damage to parcels of land owned by third parties that were not a part of MDD's contracted work at 406 Baum Street.

{¶31} The cases *Lisn, Inc. v. Commercial Union Ins. Cos.*, 83 Ohio App.3d 625, 615 N.E.2d 650 (9th Dist.1992), and *Welfle, Inc. v. Motorist Ins. Group*, 9th Dist. Medina No. 06CA0063-M, 2007-Ohio-1899, which Frankenmuth cites to support its argument that exclusion j.6 applies to exclude coverage for repair to the hillside, are distinguishable. In *Lisn*, the court held that an exclusion identical to j.6 applied to exclude coverage for costs incurred by the insured's customer for repairing and replacing live telephone cable that had been erroneously cut by the insured while in the process of removing obsolete cables. In *Wefle*, the court held that an identical exclusion applied to preclude coverage for damage caused to the underlying concrete bridge deck while the insured was removing the top layer of asphalt from that bridge. In both of those cases, the insureds were working on their customer's property and the damages were sustained by the customer—not a third party.

13

{¶32} Because MDD was seeking coverage for damage caused to property owned by third parties and was not seeking coverage for damage caused to the part of the property on which it was working, we hold that exclusion j.6 does not apply to preclude coverage for the stabilization of the Mt. Adams hillside. The fourth assignment of error is overruled.

{¶33} Accordingly, we reverse the award of attorney fees to Cohen, Todd, Kite & Stanford, but affirm the trial court's judgment in all other respects.

Judgment affirmed in part and reversed in part.

**MYERS** and **HENDON, JJ.,** concur.

**SYLVIA SIEVE HENDON**, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry on the date of the release of this opinion.