[Cite as *William Powell Co. v. OneBeacon Ins. Co.*, 2020-Ohio-5325.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THE WILLIAM POWELL COMPANY, | : | APPEAL NOS. C-190199 |
| | | C-190212 |
| Plaintiff-Appellant/Cross-Appellee, | : | TRIAL NO. A-1109350 |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| ONEBEACON INSURANCE COMPANY, | : | |
| Defendant-Appellee/Cross-Appellant, | : | |
| | : | |
| and | : | |
| FEDERAL INSURANCE COMPANY, | | |
| Defendant-Intervenor-Appellee. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  November 18, 2020

*Vorys, Sater, Seymour, and Pease LLP, Daniel J. Buckley* and *Joseph M. Brunner*, for Plaintiff-Appellant/Cross-Appellee,

*Collins, Roche, Utley, and Garner, LLC, Richard M. Garner* and *Sunny L. Horacek*, for Defendant-Appellee/Cross-Appellant,

*Seeley, Savidge, Ebert and Gourash Co., LPA, Daniel F. Gourash* and *Robert D. Anderle*, for Defendant-Intervenor-Appellee.

**ZAYAS, Judge.**

{¶1} Having vacated the previously issued opinion in this case, *William Powell Co. v. OneBeacon Ins. Co.*, 1st Dist. Hamilton No. C-190199, 2020-Ohio-3270, we issue the following opinion upon motion for reconsideration.

{¶2} This is another appeal in a years-long insurance-coverage dispute involving asbestos-related liabilities. The insured, plaintiff-appellant/cross-appellee The William Powell Company ("Powell"), appeals the portions of the trial court's judgment favorable to the insurers, defendant-appellee/cross-appellant OneBeacon Insurance Company ("OneBeacon") and defendant-intervenor-appellee Federal Insurance Company ("Federal").

{¶3} The threshold issue before us is whether excess-liability insurance policies (hereinafter, "excess policies") issued by OneBeacon and Federal to cover periods between 1969 and 1977 support a vertical-exhaustion or a horizontal-exhaustion method of insurance coverage. "Horizontal exhaustion reflects the idea that all triggered primary policies must be exhausted before any excess policy will be triggered. Vertical exhaustion, on the other hand, means that, based on the policy language, an excess policy is considered excess only to the primary policy directly below it." *Viking Pump, Inc. v. Century Indemn. Co.*, Del.Super. No. 10C-06-141 FSS CCLD, 2014 WL 1305003, *6 (Feb. 28, 2014). Following a three-week bench trial, the trial court concluded that horizontal exhaustion applies and ruled against Powell. We disagree and reverse the trial court's judgment.

## I. Background and Procedural History

{¶4} Powell is a manufacturer of industrial valves based in Cincinnati, Ohio. Some valves manufactured before 1987 included one or more components made of

asbestos. As a result, Powell began receiving bodily-injury claims from plaintiffs all over the country related to asbestos exposure involving its products. Confronted with thousands of claims, Powell sought defense and indemnification under its various insurance policies.

{¶5} Powell had purchased primary and excess comprehensive general-liability insurance to cover its operations. "Primary insurance refers to the first layer of coverage, whereby liability attaches immediately upon the happening of an occurrence that gives rise to liability. Excess insurance, by contrast, refers to indemnity coverage that attaches upon the exhaustion of underlying insurance coverage for a claim." (Internal citations and quotations omitted.) *Montrose Chem. Corp. v. Superior Court of Los Angeles Cty.*, 9 Cal.5th 215, 460 P.3d 1201 (2020). An excess insurer's coverage obligation typically begins once a certain level of loss or liability is reached, which is referred to as the "attachment point" of the excess policy. *Id.*

{¶6} This appeal concerns policies that were written by a predecessor to OneBeacon and by Federal. OneBeacon's policies consist of ten different primary-liability insurance policies and three excess policies covering various periods from 1969 to 1976 (policies XC5424, XC6867, and XC10362). Federal's policy consists of one excess policy covering from 1976 to 1977 (policy 7932-95-55).

{¶7} Powell's litigation against OneBeacon originally began in 2011. After years of working to resolve the mounting asbestos-related claims, Powell and OneBeacon reached an impasse over the interpretation of available insurance coverage. Powell filed a complaint in which it sought a declaratory judgment of its rights under the OneBeacon policies. OneBeacon filed a counterclaim in which it also asked the court to declare the parties' rights under the policies at issue. Both parties subsequently moved for summary judgment. The trial court granted Powell's

3

motion for summary judgment in part, denied OneBeacon's motion, and left undecided an issue regarding the allocation of losses among the various insurance policies. OneBeacon appealed.

{¶8} Because the trial court left the allocation issue undecided, we dismissed the appeal for lack of a final appealable order. *See William Powell Co. v. OneBeacon Ins. Co.*, 1st Dist. Hamilton No. C-130681, 2014-Ohio-3528. After this dismissal, the trial court dismissed Powell's claims relating to the allocation issue, in addition to a claim involving excess-liability insurance. OneBeacon had sought a declaratory judgment that its excess policies had not been triggered because Powell had other "collectible and underlying insurance," relying on a clause in its insurance policies. Powell had sought a declaratory judgment that in the event the underlying policies were triggered, OneBeacon was required to pay all of the defense costs and settlement costs under its excess policies under Ohio law. The trial court concluded that it lacked subject-matter jurisdiction because these issues were not ripe for review. The trial court granted Powell's motion for summary judgment for the remaining claims and dismissed OneBeacon's claims. OneBeacon appealed.

{¶9} In *William Powell Co. v. OneBeacon Ins. Co.*, 2016-Ohio-8124, 75 N.E.3d 909 (1st Dist.) ("*Powell I*"), OneBeacon challenged a number of the trial court's decisions. Specifically, it challenged the determination that Powell's asbestos-exposure liability arose from multiple occurrences, that the aggregate limits of the insurance policies should apply annually, that the aggregate limits of two of the policies had been increased from their initial amounts, and that the issue of whether the excess policies had been triggered was not ripe for review. It also challenged an award of attorney fees on a motion to compel. We affirmed the trial court's judgment in all but one respect. We determined that the trial court erred in

4

finding that two "stub period" policies applied annually when each policy should have received a single aggregate limit. *See Powell I* at ¶ 40-42.

{¶10} We upheld the trial court's determination that Powell's liability arose from multiple occurrences, which was detrimental from OneBeacon's perspective as the insurance policies it issued to Powell were occurrence-based policies. "[T]hat is, they provided coverage for any covered incident that 'occurs' during the policy period, regardless of when a claim is filed." *Powell I* at ¶ 6. OneBeacon argued that Powell's liability stemmed from its singular decision to manufacture and sell asbestos-containing products without providing adequate warnings, while Powell argued that each individual claimant's exposure to asbestos constituted an occurrence. Relying on earlier asbestos-exposure caselaw, this court held that the "triggering-event" theory and the policy language supported Powell's argument. *See Powell I* at ¶ 17-25, citing *Cincinnati Ins. Co. v. ACE INA Holdings, Inc.*, 175 Ohio App.3d 266, 2007-Ohio-5576, 886 N.E.2d 876 (1st Dist.). Accordingly, the trigger for liability for bodily-injury claims is the exposure to asbestos, rather than a more remote cause, such as the decision to use asbestos or the failure to warn. *See Powell I* at ¶ 21, citing *Babcock & Wilcox Co. v. Arkwright-Boston Mfg. Mut. Ins. Co.*, 53 F.3d 762 (6th Cir.1995).

{¶11} We also upheld the trial court's determination that the question of whether OneBeacon's excess policies had been triggered was not yet ripe. We found that OneBeacon's request for declaratory relief—that its defense obligations to Powell under its excess policies are not triggered if there is other triggered primary insurance—remained hypothetical without a determination as to the existence of other primary insurance. *See Powell I* at ¶ 47 ("To be ripe, a declaratory judgment cannot be dependent on the occurrence or nonoccurrence of future events.").

5

{¶12} OneBeacon petitioned the Ohio Supreme Court for review of *Powell I*, but the court declined. *See William Powell Co. v. OneBeacon Ins. Co.*, 151 Ohio St.3d 1426, 2017-Ohio-8371, 84 N.E.3d 1063.

{¶13} The case returned to the trial court yet again, where Powell filed its second amended complaint. On December 8, 2017, Powell added two claims for breach of contract against OneBeacon, alleging (1) that OneBeacon improperly allocated claim payments and refused to honor Powell's allocation selections and (2) that OneBeacon failed to pay 100 percent of the defense and indemnity costs under its excess policies. This effectively ripened the claims that were previously dismissed by the trial court in *Powell I*. OneBeacon filed an amended counterclaim, cross-claim and third-party complaint on February 22, 2018, in which it brought claims against Powell regarding allocation, exclusions in its excess policies, and contribution. OneBeacon added other insurers that had issued policies to Powell as third-party defendants in order to bring contribution claims against them. Federal entered the case on March 19, 2018, by filing a counterclaim and a cross-claim, in which it alleged contribution claims against Powell and the third-party defendants named by OneBeacon.

{¶14} Powell, OneBeacon and Federal ultimately moved for summary judgment. The trial court denied these motions, finding that factual disputes precluded summary judgment. The trial court granted summary-judgment motions filed by certain third-party defendants that in the interim had reached a settlement agreement with Powell. OneBeacon and Federal withdrew their contribution claims against the remaining third-party defendants.

{¶15} The case proceeded to a bench trial on August 28, 2018. Over the course of three weeks, Powell, OneBeacon and Federal had the opportunity to present witnesses and submit evidence. The trial court issued its initial decisions on

November 26, 2018, and January 11, 2019, and entered final judgment reflecting the rulings in its initial decisions on March 18, 2019. The primary issues decided by the trial court, as relevant to Powell's appeal and OneBeacon's cross-appeal, related to allocation, excess insurance, and contribution.

{¶16} In regard to allocation, the parties disagreed on how to allocate losses where an occurrence spanned over multiple policy periods. Powell argued that pursuant to *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, it was permitted to allocate all sums expended in relation to an individual claimant to any single triggered insurance policy up to the that policy's limit. *Goodyear* adopted an "all sums" approach to the allocation of insurance coverage among multiple primary insurers. This "all sums" method allows an insured to choose one of its multiple carriers to reimburse it for all costs incurred, even though covered by other insurance carriers, when the injury is continuous and cannot be attributed to one period covered by only one insurance carrier. The *Goodyear* court determined that the "all sums" method leaves "the insurers [to] bear the burden of obtaining contribution from other applicable primary insurance policies as they deem necessary." *Goodyear* at ¶ 11.

{¶17} OneBeacon claimed that Powell waived its right to allocate, or that it caused an unreasonable delay in making its allocation selections under the doctrine of laches, and argued that OneBeacon was therefore permitted to allocate the expended sums pro rata. Under a pro rata approach, the losses would be proportionally allocated to all insurance policies in effect based on the duration of an individual claimant's occurrence. The trial court ruled in favor of Powell, holding that Powell has the right to direct allocation of claims pursuant to *Goodyear* and to enforce the allocation model that Powell provided to OneBeacon.

{¶18}   With respect to excess insurance, the parties disagreed as to whether the excess policies were triggered to provide coverage.  This disagreement stemmed from a clause in OneBeacon's policies and Federal's policy which limited their liability to net losses in excess of an insured's underlying insurance, including, for instance "the applicable limits of any other underlying insurance collectible by the insured."   OneBeacon and Federal argued that their excess policies were not triggered, as pursuant to the policy language, excess policies do not attach to cover any claims until all underlying and collectible insurance held by the insured is exhausted (i.e., when the policy limits of the underlying insurance are expended).  OneBeacon and Federal argued that, in addition to unexhausted primary-liability insurance policies issued by OneBeacon, Powell had an underlying and collectible primary-liability insurance policy issued by National Union Fire Insurance Company ("National Union"), which covered bodily-injury claims from 1977 to 1979, that was not yet exhausted.

{¶19}   Powell argued that OneBeacon's excess policies and Federal's policy *were* triggered, contending that only the underlying insurance covering the same policy period as the excess policies must be exhausted, and alternatively, that it did not have an underlying insurance policy to exhaust through National Union.  Powell argued that its National Union policy was not underlying and collectible primary insurance, in part, because the policy contained a per-occurrence self-insured retention provision in the amount of $250,000.  (This meant that Powell itself had to pay defense and/or indemnity costs until the $250,000 limit was reached before National Union would begin to respond to the loss.)  The trial court ruled in favor of OneBeacon and Federal, holding that Powell's National Union policy was underlying and collectible insurance, and that the excess policies involved were not triggered because the National Union policy was not exhausted.  The trial court was persuaded

by a California appellate court case, *Padilla Constr. Co. v. Trans. Ins. Co.*, 150 Cal.App.4th 984, 58 Cal.Rptr.3d 807 (Cal.App.2007), which held that a self-insured retention provision did not affect whether the insurance policy was underlying and collectible.

{¶20} As to the contribution issue, Powell argued that OneBeacon and Federal were not entitled to contribution from their insured. Powell contended that Ohio caselaw established that an insurer's right to recover amounts paid in excess of its fair share only applied to *other insurers*—not insureds. OneBeacon and Federal argued that, regardless of the term used ("contribution" or "reimbursement"), they are entitled to an equitable remedy for overpayment of claims for which they were not liable. The trial court ruled in favor of OneBeacon and Federal, finding that OneBeacon is entitled to contribution from Powell in the amount of $11,283,381 and Federal is entitled to $477,385.80 "for indemnity amounts previously paid."

{¶21} Powell now appeals, raising four assignments of error. The first assignment challenges the court's decision to deny Powell's motions for summary judgment. The second assignment is directed at the court's decision that horizontal exhaustion applies to OneBeacon's and Federal's excess policies. The third assignment disputes the trial court's finding that OneBeacon did not breach its contract with Powell with regard to coverage in its excess policies. The fourth assignment challenges the trial court's decision to permit OneBeacon and Federal to recover contribution from Powell. OneBeacon filed a cross-appeal, raising one assignment of error challenging the trial court's decision to grant Powell's claim regarding allocation.

## II.  Analysis

### A.  Summary Judgment was Properly Denied

{¶22}   In its first assignment of error, Powell claims that the trial court erred in denying its motions for summary judgment against OneBeacon and Federal.  The denial of a motion for summary judgment based on the interpretation of an insurance contract is reviewed de novo.  *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 12, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995).

{¶23}   Generally, when a trial court denies summary judgment, any error is rendered harmless by a trial on the same issues raised in the summary-judgment motion.  *Coleman v. Progressive Preferred Ins. Co.*, 1st Dist. Hamilton No. C-070779, 2008-Ohio-3568, ¶ 18, citing *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 642 N.E.2d 615 (1994) ("[C]ourts throughout this country generally hold that the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits.")  That is the case here—the issues raised in Powell's motions for summary judgment proceeded to a lengthy trial, after which the trial court found that the evidence supported a judgment for the opposing parties, OneBeacon and Federal.  "Any error at the summary-judgment stage was cured by the trial or will be cured by our review of the trial." *Coleman* at ¶ 18.  Therefore, Powell's first assignment of error is overruled.

### B.  Excess Policies Support Vertical Exhaustion

{¶24}  Within its second assignment of error, Powell challenges the trial court's decisions that OneBeacon's and Federal's excess policies support horizontal exhaustion rather than vertical exhaustion, that OneBeacon and Federal were not required to defend and pay claims as soon as the directly underlying primary policy listed on their respective schedule of underlying insurance was exhausted, and that the National Union policy was applicable and collectible insurance.  Powell argues that a horizontal-exhaustion method of utilizing liability insurance coverage is

incompatible with Ohio law and the policy language of OneBeacon's and Federal's insurance policies. This assignment presents a threshold question because if the excess policies support a vertical-exhaustion method of coverage rather than horizontal exhaustion, then Powell may be entitled to excess coverage under its triggered insurance policies and therefore would not be required to return the funds that insurers had already properly paid out under their excess policies, as the trial court ordered.

{¶25} The trial court's decision regarding insurance coverage is a question of law that we review de novo. *City of Cincinnati v. Metropolitan Design & Dev., LLC*, 1st Dist. Hamilton No. C-170708, 2019-Ohio-364, ¶ 28, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586.

{¶26} An insurance policy is a contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. When presented with an issue of contract interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Id.*, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). "We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins.*, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. We also look to the plain and ordinary meaning of the language used in the policy "unless manifest absurdity results" or another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. When the language of a contract is clear, we may look no further than the writing itself to find the intent of the parties. *Id.*; *Westfield Ins.* at ¶ 11. Additionally, "[w]hen the contract is worded so that it can be given a certain or definite legal meaning it is not ambiguous and the court will construe the contract

as a matter of law." *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex.2000); *see Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31. Accordingly, we begin by looking at the policy language.

*The Policy Language*

{¶27} OneBeacon's three excess policies covered Powell for various periods between 1969 to 1976. The policy period for XC5424 was from June 24, 1969, to June 24, 1972; the policy period for XC6867 was from June 24, 1972, to June 24, 1975; and the policy period for XC10362 was from June 24, 1975, to August 26, 1976. Federal's policy 7932-95-55 covered Powell from August 26, 1976, to July 26, 1977.

{¶28} As an initial matter, we see no ambiguity in the policies at issue. While there are differences among the policies, the practical effect of their terms is essentially the same. In the OneBeacon policies XC6867 and XC10362, for example, OneBeacon agreed to "[indemnify] the insured for all sums which the insured shall become legally obligated to pay * * * in excess of the insured's retained limits * * * ." In the Federal policy 7932-95-55, Federal agreed "subject to all of the terms of [the] policy, to pay on behalf of the insured all sums, as more fully defined by the term ultimate net loss, for which the insured shall become obligated to pay * * *."

{¶29} The "retained limits" sections of the policies are likewise similar. For instance, OneBeacon policies XC6867 and XC10362 both state:

[OneBeacon's] liability shall be only for the ultimate net loss in excess of the insured's retained limits defined as the greater of:

(a) the total of the applicable limits of liability of the underlying insurance as set forth in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the insured; or

(b) with respect to each occurrence not covered by the said underlying insurance listed in the Schedule, the amount of the insured's minimum

retained limit as specified in Item 3(a) of the Declarations or the applicable limit of any other underlying insurance collectible by the insured, whichever is the greater, and [OneBeacon's] liability for such excess ultimate net loss shall then be limited to an amount not exceeding the amount specified in Item 3(b) of the Declarations as the result of any one occurrence.

OneBeacon policy XC5424 is worded only slightly different, but with the same effect.

{¶30} "Underlying insurance" is defined within OneBeacon policies XC6867 and XC10362 as follows: "If collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder, such insurance shall be deemed to be 'underlying insurance,' provided, however, this does not apply to insurance which is written as excess insurance over the limits provided by this policy." Thus, two types of insurance policies qualify as underlying insurance: (1) any insurance policy scheduled in the Schedule of Underlying Insurance Policies attached to policies, and (2) unscheduled insurance policies applicable to a "loss also covered hereunder"—that is, an accident that resulted in bodily injury and property damage which occurred during the policy period.

{¶31} Federal's policy contained a provision under its "Conditions" section entitled, "Other Insurance," which stated as follows:

If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing contained herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

13

**{¶32}** OneBeacon policy XC5424 does not define "underlying insurance," but contains a clause requiring the maintenance of underlying insurance that provides significant context to its meaning. Its "Maintenance of Underlying Insurance" clause states: "It is warranted by the insured and a condition of this policy that the underlying policies listed in the schedule attached hereto, or renewals or replacements thereof not more restricted, shall be maintained in force as collectible insurance during the currency of this policy * * *." Thus, the "underlying insurance" required to be maintained refers to scheduled underlying policies or unscheduled "renewals or replacements thereof." The clause further required maintaining either scheduled or unscheduled underlying insurance "during the currency of this policy," or, during the time period for which the policy provided coverage.

**{¶33}** Notably, all of the policies contained a like clause requiring the maintenance of underlying insurance. For example, OneBeacon's other policies' "Maintenance of Underlying Insurance" clause states:

> It is warranted by the insured and a condition of this policy that the underlying policies listed in the schedule attached hereto, or renewals or replacements thereof not more restricted, shall be maintained in force as collectible insurance during the currency of this policy, except for a reduction of the aggregate limits contained therein solely by payments in respect of occurrences happening during the policy period. In the event of failure by the insured so to maintain such policies, or to meet all conditions and warranties subsequent to loss under such policies, the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force. Notice of exhaustion of underlying insurance shall be given the company within 30 days of such exhaustion.

14

{¶34} All of the policies also contained a clause requiring notification to the insurer when additional insureds were added to the underlying insurance. OneBeacon's "Notice of Additional Insureds" clause states:

> In the event of any additional insured or insureds being added to the coverage under the Underlying Insurance during the currency of this policy, prompt notice shall be given to [OneBeacon] and if [an] additional premium has been charged for such addition to the Underlying Insurances, the company shall be entitled to charge an appropriate additional premium under this policy.

{¶35} OneBeacon's excess policies and Federal's excess policy also had parallel clauses pertaining to when the excess policy would cover an insured in the event of reduction or exhaustion of underlying insurance—a so-called a "drop-down clause." *See Black's Law Dictionary* (11th Ed.2019). These provisions state that:

> In the event that the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted by reason of losses that arise out of occurrences which take place during the period of this policy, the company shall, subject to [OneBeacon's] limits of liability which are stated above, continue such coverage as is afforded by the listed underlying insurance in excess of the reduced or exhausted underlying limits.

{¶36} When reading the contract as a whole and giving effect to each provision, this language is clear. In the event of a covered occurrence, OneBeacon and Federal contracted to indemnify Powell for its ultimate net loss, as defined within each policy, in excess of Powell's retained limits—which is generally defined as the total limits of underlying insurance listed in the schedule attached to the policy

or that of underlying insurance not scheduled but which covered an occurrence that necessarily took place during the same period as the excess policy.

{¶37} There is no contractual language requiring the exhaustion of other insurance policies in years preceding or following the years for which OneBeacon and Federal sold their excess policies. *Compare Westport Ins. Corp. v. Appleton Papers Inc.*, 327 Wis.2d 120, 787 N.W.2d 894 (2010) *with First State Ins. Co. v. ACE Prop. and Cas. Co.*, Montgomery C.P. No. 2016CV00697 (Sept. 13, 2017). Rather, in all of the policies the insurance to be exhausted is only modified by the word "underlying," the plain meaning of which is "that which lies beneath or below." *See* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/ underlying (accessed March 30, 2020). This meaning is reflected in OneBeacon's policies' definition of the term "underlying insurance" ("collectible insurance with any other insurer [] available to the insured covering a loss *also covered hereunder*") and Federal's policy provision regarding "Other Insurance" ("any other insurance [] available to the insured *covering a loss also covered by this policy*"). The insurers here are liable under the policies if there is an occurrence during the policy period. *See Powell I*, 2016-Ohio-8124, 75 N.E.3d 909, at ¶ 25 ("[a]n occurrence constitutes each individual claimant's exposure to asbestos"). Thus, underlying insurance— insurance available to cover a loss also covered by the excess policy—must also be insurance covering an occurrence during the policy period.

{¶38} This makes sense because ostensibly OneBeacon and Federal priced their policies, and collected the premiums, based on the amount of insurance *underneath them in coverage* during the years for which they sold these policies. *See Griewahn v. United States Fid. & Guar. Co.*, 160 Ohio App.3d 311, 2005-Ohio-1660, 827 N.E.2d 341, ¶ 44 (7th Dist.) ("Excess insurance is priced on the assumption that primary coverage exists[.]"). In other words, the policy language

reveals that "underlying insurance" "refers only to policies covering the same risk, such as concurrent policies." (Internal citation omitted.) *Viking Pump, Inc. v. Century Indemn. Co.*, Del.Super. No. 10C-06-141 FSS CCLD, 2014 WL 1305003, at *10. Prior and subsequent policies, on the other hand, insure against different risks in different time periods.[1] *Id.*

{¶39} We are further persuaded by Powell's argument that the unscheduled underlying insurance referred to in the "retained limits" sections in each of the policies means underlying insurance that might replace a policy on the schedule of underlying insurance—something that occurred in this case. The schedule of underlying insurance in OneBeacon policy XC5424 lists a 1968 primary policy that was cancelled during the term of the excess policy. The scheduled primary policy was replaced with another primary policy, and the replacement policy was henceforth unscheduled. This so-called "scheduled plus" language of the retained-limits section would also include additional insurance obtained during the term of the OneBeacon and Federal policies. This interpretation gives meaning to "scheduled plus," while preserving the plain meaning of the term "underlying."

{¶40} OneBeacon argues that *First State Ins.*, a recent trial court decision out of Montgomery County, supports its position and the opposite interpretation. We disagree. In that case, the insurer explicitly stated in its "Limits of Liability" clause that underlying insurance includes primary insurance in place prior to the inception of the First State policy, as well as those policies in place after the inception of the policy. *First State Ins.*, Montgomery C.P. No. 2016CV00697, at *6. OneBeacon and Federal could have included the same language within their policies

---

[1] Under OneBeacon's theory, the "retained limit" increases, and OneBeacon's exposure substantially decreases, with each renewal of a primary policy. But there is no suggestion or evidence—such as changes in policy premiums—to demonstrate that is what OneBeacon, Federal

17

but they did not, and neither can we. *See Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988) ("In matters of construction, it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used."); *see also Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978) ("[T]his court cannot in effect create a new contract by finding an intent not expressed by the clear language employed by the parties.").

**{¶41}** OneBeacon also argues that when it meant "scheduled," "directly below," or "during the same time period," the policy explicitly stated it. This implies that where the term "underlying insurance" occurs by itself, it did not necessarily mean insurance covering the same time period as the excess policies. However, this interpretation would render meaningless the definition of "underlying insurance" in OneBeacon policies XC6867 and XC10362. The same is true for the Federal policy and its provision regarding "other insurance." *See Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 2012-Ohio-1942, 971 N.E.2d 967, ¶ 14 (8th Dist.) ("Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.").

**{¶42}** Moreover, if "underlying insurance" referred to insurance policies issued in years preceding or following the years of excess coverage, OneBeacon and Federal would not have restricted their maintenance requirement and notice provisions to only the years that their excess policies were in effect. All of the policies required the maintenance of underlying insurance and notice of additional insureds "during the currency of the policy." Restricting notice and maintenance provisions to the currency of the policy reflects what other courts have interpreted the so-called "other insurance" clause to mean: the allocation of responsibility for a

---

or Powell intended. *See Chicago Ins. Co. v. Pacific Indem. Co.*, 566 F.Supp. 954, 957 (E.D.Pa.1982).

loss among insurers, rather than as a means of avoiding or deflecting liability to an insured. *See State of California v. Continental Ins. Co.*, 15 Cal.App.5th 1017, 1032, 223 Cal.Rptr.3d 716 (4th Dist.2007) ("[other-insurance clauses are intended to apply in contribution actions between insurers, not in coverage litigation between insurer and insured").

**{¶43}** Thus, "[w]hen multiple policies are triggered on a single claim, the insurers' liability is apportioned pursuant to the 'other insurance' clauses of the policies or under the equitable doctrine of contribution. That apportionment, however, has no bearing upon the insurers' obligations to the policyholder." (Internal citations omitted.) *Dart Industries, Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1080, 124 Cal.Rptr.2d 142, 52 P.3d 79 (2002). "This principle is consistent with the settled rule that an insurer on the risk when continuous or progressively deteriorating damage or injury first manifests itself remains obligated to indemnify the insured for the entirety of the ensuing damage or injury." (Internal quotations omitted.) *Id.* Ultimately, the function of "other insurance" clauses is to prevent multiple recoveries "when two or more policies provide coverage during the same period," as opposed to successive policies. *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 223, 774 N.E.2d 687 (2002), citing *Owens-Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 470, 650 A.2d 974 (1994) ("Historically, 'other insurance' clauses were designed to prevent multiple recoveries when more than one policy provided coverage for a given loss.").

**{¶44}** We therefore find that vertical exhaustion rather than horizontal exhaustion is consistent with the policy language. And, contrary to OneBeacon's suggestion, vertical exhaustion in this case is also consistent with the triggering-event and allocation principles already established. In *Goodyear*, the Ohio Supreme Court specifically refused to require proration among insurance policies when an

19

occurrence spanned multiple policy periods, as proration would require an insured to take on the burdensome task of proving the value of damages in a specific year. *Goodyear*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835. Consequently, the *Goodyear* court held that an insured "is entitled to secure coverage from a single policy of its choice that covers 'all sums' incurred as damages 'during the policy period,' subject to that policy's limit of coverage." *Goodyear* at ¶ 11. Like the "all sums" method of allocation, the aggregation of concurrent policies, such as a primary policy coupled with an excess policy, provides a degree of certainty and predictability. *See Carter-Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312, 327, 712 A.2d 1116 (1998). The insurers here are only liable for an occurrence during the coverage period, and only when their respective attachment points are reached. Thus, vertical exhaustion does not require OneBeacon or Federal to pay more than it contracted to pay for any given policy year, after conditions to which it agreed have been met. *See Westport Ins.*, 327 Wis.2d 120, 787 N.W.2d 894, at ¶ 79. Finally, vertical exhaustion also preserves the distinction between primary and excess insurers while precluding excess insurers from avoiding coverage in long-term, continuous-exposure cases such as this one.

*The National Union Policy*

{¶45} National Union policy GLAL53-34242 was issued to Powell to cover a policy period from July 26, 1977, to July 26, 1979. By its plain language, the policy was primary comprehensive general-liability insurance. The policy states: "The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance." While a later endorsement specifies a self-insured retention amount—"agreed limits as expressed in this policy shall apply as excess over the Self-insured Retention of 250,000 each occurrence"—this endorsement did not transform the primary policy into an excess

20

policy. Nevertheless, pursuant to the preceding analysis, the policy was not underlying insurance to OneBeacon's excess policies or Federal's excess policy. We decline to reach the issue of whether the presence of the self-insured retention has any effect on whether the National Union policy is collectible underlying insurance in another instance. Powell's second assignment of error is sustained.

### C. OneBeacon Breached Its Contract

{¶46} In its third assignment of error, Powell claims that the trial court erred in granting judgment to OneBeacon on Powell's second breach-of-contract claim. As a result of our determination on the threshold question above, we agree.

{¶47} A trial court's ruling following a bench trial is generally reviewed under a manifest-weight standard of review. *See United States Fire Ins. v. Am. Bonding Co.*, 1st Dist. Hamilton No. C-160307, 2016-Ohio-7968, ¶ 16. That is, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. Where the trial court's judgment is based upon a question of law, however, we review the trial court's determination of that issue de novo. *See United States Fire Ins.* at ¶ 17, citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34.

{¶48} Count II of Powell's second amended complaint alleges that OneBeacon breached its excess policies—XC5424, XC6867, and XC10362—by not paying 100 percent of Powell's defense and indemnity for the asbestos-exposure claims that arose under those policies. "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss

resulting from the breach." (Internal citations omitted.) *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458.

{¶49} It is undisputed that OneBeacon's excess policies were valid and binding contracts. Rather, the point of contention lies with attachment. OneBeacon argues that it did not breach its contracts because its policies were not attached. OneBeacon argues that pursuant to Powell's own allocation model there are unexhausted OneBeacon primary policies underneath its excess policies, and that even if its primary policies were exhausted, Powell's National Union policy was not. In light of our finding that vertical exhaustion applies to the excess policies at issue, we need only look to the underlying insurance directly beneath OneBeacon's excess policies.

{¶50} The evidence established that three OneBeacon primary policies remain unexhausted under Powell's allocation selections: GLA3807927, which covered Powell from June 24, 1970, to June 24, 1971, is underlying primary insurance to XC5424 and $137,378.50 remains available; GLA4345057, which covered Powell from June 24, 1975, to June 24, 1976, is underlying primary insurance to XC10362 and $283,299.95 remains available; and GLA4271741, which covered Powell from July 26, 1976, to July 26, 1977, is underlying primary insurance to Federal's policy 7932-95-55 and $511,551.50 remains available.

{¶51} With available underlying primary insurance directly beneath it, XC10362, a one-year excess policy, was not attached to cover Powell's claims between June 24, 1975, and June 24, 1976, and therefore OneBeacon could not have breached this insurance contract with Powell. Likewise, XC5424, a three-year excess policy, was not attached to cover claims between June 24, 1970, and June 24, 1971, and therefore OneBeacon could not have breached its insurance contract with Powell for that year's claims. However, to the extent OneBeacon did not pay claims under

XC5424 that occurred between June 24, 1969, to June 24, 1970 and June 24, 1971, to June 24, 1972, OneBeacon breached its obligations. OneBeacon is required to pay all sums that Powell became legally obligated to pay as damages on a claim under its attached excess policies, in addition to any expenses incurred by Powell to defend a claim. Accordingly, Powell's third assignment of error is sustained in part, overruled in part, and the cause is remanded for the trial court to make a determination as to the amount of damages to which Powell is entitled based on the evidence presented.

### D. Contribution

{¶52} In its fourth assignment of error, Powell claims that the trial court erred by permitting OneBeacon and Federal to recover contribution from their insured.

{¶53} A trial court's application of equitable principles, which includes the doctrine of contribution, is discretionary. (Internal citations omitted.) *Resco Holdings, L.L.C. v. AIU Ins. Co.*, 2018-Ohio-2844, 112 N.E.3d 503, ¶ 13 (8th Dist.). Therefore, we "will not disturb a trial court's exercise of its equity discretion absent an abuse of discretion." *Id.* An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13. An abuse of discretion may also be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶54} "Contribution is an insurer's right to recover amounts paid in excess of its fair share of an obligation shared by other insurers." *Resco Holdings* at ¶ 11. The general rule of the doctrine is "that one who is compelled to pay or satisfy the whole to bear more than his or her just share of a common burden or obligation, upon which several persons are equally liable is entitled to contribution against the others

to obtain from them payment of their respective shares." (Internal quotations omitted.) *Pennsylvania Gen. Ins. Co. v. Park-Ohio Industries, Inc.*, 179 Ohio App.3d 385, 2008-Ohio-5991, 902 N.E.2d 53, ¶ 21 (8th Dist.). It "rests upon the broad principle of justice, that where one has discharged a debt or obligation which others were equally bound with him to discharge, and thus removed a common burden, the others who have received a benefit ought in conscience to refund to him a ratable proportion." *Baltimore & Ohio RR. Co. v. Walker*, 45 Ohio St. 577, 588, 16 N.E. 475 (1888).

{¶55} Here, because the trial court found that OneBeacon's excess policies and Federal's policy were not triggered but OneBeacon and Federal had already paid Powell's excess indemnity and defense costs, it ruled that OneBeacon and Federal were entitled to reimbursement from Powell for this overpayment. In this sense, the trial court did not grant OneBeacon or Federal the right to recover contribution from their insured, as it did not find OneBeacon or Federal liable to begin with. Thus, we find that the trial court abused its discretion in determining that OneBeacon and Federal were entitled to contribution.

{¶56} However, Federal is entitled to recover from Powell under a restitution theory. *See Chiquita Brands Internatl., Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh Pa*, 2015-Ohio-5477, 57 N.E.3d 97, ¶ 8 (1st Dist.). Restitution is proper where one party to a contract demands performance from the other "that is not in fact due by the terms of that contract under circumstances where it is reasonable to accede to that demand, and where the party on whom the demand is made renders such performance under a reservation of rights," which preserves a claim in restitution to recover the value of the benefit conferred. *Id.*, citing 1 Restatement of the Law 3d, Restitution and Unjust Enrichment, Section 35 (2011).

{¶57} In this case, Federal's policy was not yet triggered to provide coverage. Based on Powell's allocation selections, a OneBeacon primary policy that is scheduled underlying insurance to the Federal policy still has collectible funds. Under the terms of Federal's policy, its excess insurance is not available until the retained limit is exhausted. And the policy's retained limit includes, in part, "underlying insurance listed in the schedule." However, pursuant to a demand by Powell in 2011—that Federal begin paying indemnity to settle asbestos claims, Federal paid out $477,385.80 under its excess policy with a reservation of rights. A reservation of rights "is a notice given by the insurer that it will defend the suit, but reserves all rights it has based on noncoverage under the policy." *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 45, 294 N.E.2d 874, 877 (1973). Therefore, Federal did not waive its claim to the settlement funds it paid out. And because Federal was not liable for the amount it paid out in the first place, Federal is entitled to restitution for that amount.

{¶58} By contrast, as discussed in the preceding section, OneBeacon only paid out monies under excess policies that were attached, and thus it was liable for the monies it had paid out. Therefore, OneBeacon is not entitled to restitution. We sustain Powell's fourth assignment of error in part, overrule it in part, and remand the cause for the trial court to enter judgment for Federal in the amount of $477,385.80 as restitution.

### E. Allocation

{¶59} In its first cross-assignment of error, OneBeacon claims that the trial court erred by entering judgment that Powell had the right to direct allocation pursuant to *Goodyear*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835.

{¶60} As a preliminary matter, within this assignment OneBeacon contends that the issue of allocation is moot for several reasons, none of which have merit.

25

OneBeacon claims that coverage for asbestos claims is precluded under a pollution exclusion in its excess policies XC6867 and XC10362, but XC5424 contains no such exclusion.[2] OneBeacon claims that because its primary policies are exhausted there is nothing left to allocate, yet disputes the amount that Powell is permitted to allocate to its primary policies (in its opposition to Powell's fourth assignment of error). OneBeacon also claims that Powell entered a settlement agreement that effectively resolved allocation for all of its insurers, but according to the terms of the settlement agreement the issue of allocation has not been resolved, with the settling insurers having agreed to pay up to their policy limits in the future. *Compare GenCorp, Inc. v. AIU Ins. Co.*, 297 F.Supp.2d 995, 1007 (N.D.Ohio 2003), *aff'd*, 138 Fed.Appx. 732 (6th Cir.2005) (settlements extinguished all claims related to primary insurers, prohibiting excess insurers from seeking contribution). Therefore, we find that the issue of allocation is not moot.

{¶61} OneBeacon argues that the trial court erred in determining that Powell did not waive its allocation rights under *Goodyear*. "An assertion that a party waived an argument presents a mixed question of law and fact." (Internal citations omitted.) *Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 2019-Ohio-3231, 134 N.E.3d 1175. We review de novo the legal question whether Powell's conduct amounts to a waiver of its right to allocate, "but we review the factual findings underlying the trial court's determination only for clear error." *Id.*, citing *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir.2009).

---

[2] OneBeacon raised the issue of its pollution exclusions in the trial court and argues its merits in its briefs, but did not assign error to the trial court's ruling on the merits of that issue and we decline to address it. *See* App.R. 12(A)(1)(b); *Hetrick v. Ohio Dept. of Agriculture*, 2017-Ohio-303, 81 N.E.3d 980, ¶ 19 (10th Dist.) ("[G]enerally, appellate courts rule on assignments of error only, and do not address mere arguments.").

{¶62} Waiver is the voluntary relinquishment of a known right. *Gembarski* at ¶ 24. A party can waive a right by express words or through conduct that is inconsistent with that right. *Id.* But "[m]ere silence will not amount to waiver where one is not bound to speak." *Id.*, quoting *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198, 2 N.E.2d 501 (1936). "A party asserting waiver must prove it by establishing a clear, unequivocal, decisive act by the other party, demonstrating the intent to waive." (Internal quotations omitted.) *Mike McGarry & Sons, Inc. v. Constr. Resources One, LLC*, 2018-Ohio-528, 107 N.E.3d 91, ¶ 103 (6th Dist.). That is the party must "demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right." *Gembarski* at ¶ 25, citing *Donnell v. Parkcliffe Alzheimer's Community*, 6th Dist. Wood No. WD-17-001, 2017-Ohio-7982.

{¶63} In this case, the trial court held that Powell did not waive its right to allocate under *Goodyear*, explaining that

> [t]here was no evidence that Powell expressly waived its *Goodyear*
> rights. Nor has Powell taken any action that can be considered an
> implied or implicit waiver of its *Goodyear* rights. To the contrary,
> Powell and its representatives, including its attorney, Thomas Hill, its
> senior vice president of finance, Jeffery Thompson and its president,
> Randy Cowart[,] consistently made it clear that Powell expected its
> claim allocations to be according to the *Goodyear* all sums model.

We agree with the court's determination of the legal question and find no clear error in its factual findings.

{¶64} The evidence established that Powell explicitly asserted its right to allocate shortly after *Goodyear* was decided in 2002, shortly before initiating

litigation against OneBeacon in 2010, and several times in between. The evidence also established that Powell intended to maintain its own allocation model but was having difficulties compiling all of the claim information, which, as the trial court noted, involved 22,000 to 26,000 claims. That Powell was having difficulty in compiling information for its own allocation does not amount to a waiver of its allocation rights.

{¶65} We also agree with the trial court's determination as to OneBeacon's laches defense. OneBeacon argues that the trial court erred in determining that Powell did not cause an unreasonable delay in asserting its allocation rights under *Goodyear*, under the doctrine of laches. "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence." (Internal quotations omitted.) *State ex rel. Case v. Indus. Comm. of Ohio*, 28 Ohio St.3d 383, 385, 504 N.E.2d 30 (1986). "[I]t must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Id.*, citing *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959), paragraph three of the syllabus. OneBeacon cannot prove laches, as Powell did not delay in asserting its right to allocate. We overrule OneBeacon's cross-assignment of error.

### III. Conclusion

{¶66} We therefore sustain Powell's second assignment of error, sustain in part and overrule in part Powell's third and fourth assignments of error, and overrule Powell's first assignment of error and OneBeacon's cross-assignment of error. The judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with law and this opinion.

Judgment accordingly.

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.